IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 99-60609
_____


NAZARETH GATES, individually and on behalf of all other similarly situated; WILLIE LEE HOLMS, individually and on behalf of all others similarly situated; HAL ZACHARY, individually and on behalf of all others similarly situated; MATHEW WINTERS, individually and on behalf of all others similarly situated,

        Plaintiffs - Appellees,

        v.

THOMAS D COOK, Superintendent of the Mississippi State Penitentiary, also known as Parchman Prison; J D DEMOVILLE, Member of the Mississippi State Penitentiary Board; TURNER ARANT, Member of the Mississippi State Penitentiary Board; SEBE DALE, Member of the Mississippi State Penitentiary Board; ROBERT D ROBINSON, Member of the Mississippi State Penitentiary Board; H L ROBERTS, Member of the Mississippi State Penitentiary Board; JOHN BELL WILLIAMS, Governor of the State of Mississippi, and their Successors,

        Defendants - Appellees

        v.

WILLIE X STEVENSON; ET AL,

        Movants

ROBERT SHAW,

        Movant - Appellant
    and

WILLIE GAINES,

        Appellant

        ----------------------------------------------------

DAVID DARRELL MOORE; ELTON BANKS; EDDIE RAY GOWDY,

                    Plaintiffs - Appellees

        v.

KIRK FORDICE; LEROY BLACK; STEVE W PUCKETT; EDDIE LUCAS; A M
PHILLIPS,

                    Defendants - Appellees
        and

ALEXIS D BELAFONTE; ET AL,

                    Intervenor-Plaintiffs

MARTIN GROOT,

                    Intervenor-Plaintiff-Appellant

                    _____

                    Cons/w No. 00-60129
                    _____


NAZARETH GATES, individually and on behalf of all other similarly
situated; WILLIE LEE HOLMS, individually and on behalf of all
others similarly situated; HAL ZACHARY, individually and on
behalf of all others similarly situated; MATHEW WINTERS,
individually and on behalf of all others similarly situated,

                    Plaintiffs - Appellees,

            v.

THOMAS D COOK, Superintendent of the Mississippi State
Penitentiary, also known as Parchman Prison; J D DEMOVILLE,
Member of the Mississippi State Penitentiary Board; TURNER ARANT,
Member of the Mississippi State Penitentiary Board; SEBE DALE,
Member of the Mississippi State Penitentiary Board; ROBERT D
ROBINSON, Member of the Mississippi State Penitentiary Board; H L
ROBERTS, Member of the Mississippi State Penitentiary Board; JOHN
BELL WILLIAMS, Governor of the State of Mississippi, and their
Successors,

                    Defendants - Appellees

            v.

WILLIE X STEVENSON; ET AL,

                    2

Movants

WILLIE GAINES; GARY BUTLER; STEVEN HOUSTON; ROBERT SHAW; ROBERT L WHITE; ET AL,

Movants - Appellants

and

MARTIN GROOT; WILLIE NAYLOR; ET AL,

Appellants

-------------------------------------------------

DAVID DARRELL MOORE; ELTON BANKS; EDDIE RAY GOWDY,

Plaintiffs - Appellees

v.

KIRK FORDICE; LEROY BLACK; STEVE W PUCKETT; EDDIE LUCAS; A M PHILLIPS,

Defendants - Appellees

and

ALEXIS D BELAFONTE; ET AL,

Intervenors - Plaintiffs

MARTIN GROOT; WILLIE NAYLOR,

Intervenors - Plaintiffs - Appellants

_____

Cons/w No. 00-60130
_____

NAZARETH GATES, individually and on behalf of all other similarly situated; WILLIE LEE HOLMS, individually and on behalf of all others similarly situated; HAL ZACHARY, individually and on behalf of all others similarly situated; MATHEW WINTERS, individually and on behalf of all others similarly situated,

Plaintiffs - Appellees,

3

                        v.

THOMAS D COOK, Superintendent of the Mississippi State
Penitentiary, also known as Parchman Prison; J D DEMOVILLE,
Member of the Mississippi State Penitentiary Board; TURNER ARANT,
Member of the Mississippi State Penitentiary Board; SEBE DALE,
Member of the Mississippi State Penitentiary Board; ROBERT D
ROBINSON, Member of the Mississippi State Penitentiary Board; H L
ROBERTS, Member of the Mississippi State Penitentiary Board; JOHN
BELL WILLIAMS, Governor of the State of Mississippi, and their
Successors,

                Defendants - Appellees

            v.

WILLIE X STEVENSON; ET AL,

                Movants

WILLIE GAINES; GARY BUTLER; STEVEN HOUSTON; ROBERT SHAW; ROBERT L
WHITE; ET AL,

                Movants - Appellants

        and

MARTIN GROOT; WILLIE NAYLOR; ET AL,

                Appellants

        ---------------------------------------------------

DAVID DARRELL MOORE; ELTON BANKS; EDDIE RAY GOWDY,

                Plaintiffs - Appellees

        v.

KIRK FORDICE; LEROY BLACK; STEVE W PUCKETT; EDDIE LUCAS; A M
PHILLIPS,

                Defendants - Appellees


MARTIN GROOT; WILLIE NAYLOR,

                Intervenor Plaintiffs - Appellants

                            4

```
                  ---------------------------------
                  Appeals from the United States District Court
                    for the Northern District of Mississippi
                  ---------------------------------
                           November 20, 2000
```

Before JONES and BENAVIDES, Circuit Judges, and WALTER, District Judge.[*]

BENAVIDES, Circuit Judge:

Members of a settlement class made up of HIV-positive inmates in Mississippi jails appeal from the district court's denial of their motions to intervene and substitute counsel, as well as its denial of attorneys fees for the proposed substitute counsel. Appellants also contest an order banning contact between proposed substitute counsel and class members regarding prison conditions. As discussed below, we find the no-contact order to be insufficiently supported and unnecessarily broad and therefore vacate it. We also find that the district court erred in denying substitution of counsel. Given our other rulings, we remand the issue of attorneys fees to the district court.

## I. *Facts and Procedural History*

Plaintiffs below are a class comprised of HIV-positive inmates incarcerated in Mississippi prisons. The original litigation was commenced pro se by two HIV-positive inmates at the Mississippi State Penitentiary in Parchman, Mississippi [Parchman] and alleged that the Mississippi Department of

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

Corrections [MDOC] failed to provide adequate medical care for HIV-positive inmates, segregated them in inferior housing, and barred them from participating in privileges and programs available to the general prison population solely on the basis of their medical status in violation of the Eighth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

The district court denied appointment of counsel and dismissed the case as frivolous. This Court reversed, finding that the plaintiffs had stated a cause of action under Section 504 , Rehabilitation Act of 1973, 29 U.S.C. § 794, as recognized by *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991) (finding that under § 504, the district court must analyze each program from which HIV-positive inmates are excluded to determine if it could be safely integrated with reasonable accommodation). *See Moore v. Mabus*, 976 F.2d 268, 271-72 (5th Cir. 1992).

In directing the district court to appoint counsel for the class, this Court admonished that "the scope of the questions raised and the extensive resources required to pursue properly the issues in this case far exceed the capability and resources of a prisoner, and . . . the apparently essential testimony from experts on HIV-AIDS management in the prison environment will require professional trial skills." *See id.* at 272.

Upon remand, the district court appointed Ronald Welch to be

the class attorney.  Welch has served as class counsel for *Gates v. Collier*, an ongoing class action by Mississippi inmates against the state, since the 1970s, as well as several other class actions by subgroups of Mississippi inmates.  Welch is a solo practitioner.  After repeated requests by class members and explaining that he was busy with other cases and feared the general prison class' reaction to his seeking integration for HIV-positive inmates, Mr. Welch began working on the case in 1995 – two years after his appointment as class counsel.[1]

In June of 1995, the district court entered a consent decree which certified a class under Fed.R.Civ.P. 23(b)(1) and (b)(2) consisting of all HIV-positive inmates in MDOC's custody, appointed Welch as class counsel, and settled the class claims.  The settlement addressed some of the inmates' issues in broad

---

[1]The parties dispute whether Welch performed the role of counsel adequately.  Certain uncontested statements exist in the record that bear on Welch's representation.  For example, in one letter, Welch explains to class members that he will do what he thinks best for the class independent of the class members' complaints and wishes.  In a statement to the press, Welch describes class members (presumably those wishing him replaced) as "manipulative," and states that he has "no sympathy" for them because they had used their HIV-positive status to garner the public's sympathy.  Welch filed a confidential letter written to him by a class member in the public record of the district court without making any effort to redact it or file it in camera; similarly, he circulated to class members reports containing other class members' unredacted medical files.  After certain class members began to complain about his representation, Welch described his role in a letter to the class as that of an "umpire" and warned that continuing complaints would lessen the likelihood that he would help them.

terms (e.g. requiring "medically appropriate diets") but did not require substantial change on any of the original pro se plaintiffs' concerns, including integration into programs and privileges available to non-HIV-positive prisoners. No formal Fed.R.Civ.P. Rule 23(e) notice was required by the court or provided to the class. Welch mailed copies of the proposed agreement to eight class members, one of whom wrote a letter to the district court objecting to the proposed agreement.

The district court endorsed the settlement five days after the proposed agreement had been sent out and one day prior to the objection letter's arrival. The district court did not have the benefit of any class members' objections to the settlement at the time of its ruling nor did it respond to the objections provided later. The district court retained jurisdiction over the case to monitor compliance with the settlement terms.

Over the next four years, class members protested Welch's inaction on several of their complaints, the most serious and meritorious of which related to the new HIV therapies which were proving highly successful in some patients but which were unavailable to inmates. Certain class members contacted the ACLU National Prisons Project for assistance. NPP attorneys conducted a preliminary investigation to verify the legitimacy of the claims presented to them, and signed formal retainer agreements with several individual class members.

In February 1999, several class members incarcerated at

8

Parchman moved to intervene, arguing that Welch and by extension the named plaintiffs did not adequately represent their interests. On March 5, 1999, the proposed intervenors moved for a preliminary injunction alleging that their medical care under MDOC was so deficient as to endanger their lives. Both motions were prepared by counsel from the ACLU National Prisons Project (NPP), and supported by the signatures of 110 of the 140 class members.[2] Welch joined in the motion for preliminary injunction, but did not contribute to its preparation. The district court entered a preliminary injunction (not identical to that requested) upon finding that MDOC's doctors were deliberately indifferent to the class members' health, that the care they were providing was insufficient, and that it significantly lowered prisoners' chances of surviving with the HIV virus. Proposed intervenors moved for attorneys' fees.

In December 1999, proposed intervenors renewed their motion for intervention, and two class members moved for substitution of counsel. The motion for substitution of counsel was accompanied by a petition containing the signatures of 167 class members, representing one hundred percent of the HIV-positive inmates at

_____

[2]The size of the plaintiff class appears to have varied significantly over the course of the class action, and neither the record nor the parties provide firm numbers for the class size at certain particular points in time. The 140-member class noted here derives from the district court's order, which we assume to be the best available representation of class size for the period in question.

9

Parchman.[3]  In January 2000, the district court issued a temporary order forbidding NPP lawyers from contacting class members.  In February, the district court denied the motions for intervention and substitution of counsel, and converted its order into a permanent bar on NPP lawyers contacting class members regarding anything within the class counsel's "jurisdiction" -- i.e. anything relating to the treatment or prison conditions of HIV-positive inmates.  The district court also denied appellants' motion for attorneys fees.  Proposed intervenors and the unsuccessful movants for substitution of counsel and attorneys fees appeal.

## II. *Analysis*

### A.  *No-contact order*

It is a well-established principle that district courts enjoy wide latitude in managing complex litigation in general and class actions in particular.  *See, e.g.*, *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999).  However, any administration by the district court must seek to avoid impinging on class members' constitutional rights, in this case those of speech, association, and access to counsel of their choice.  Any

_____

[3]The precise total number of class members at the time of the petition is not known.  All of the class members housed at the HIV-positive segregated unit at Parchman, Unit 28, signed the petition. The petition was not signed by any class members housed elsewhere, e.g. in the women's facility.  According to estimates of the class size provided by class counsel, approximately eighty percent of the total class is represented by the petition signatures.

infringement of such rights must be strictly limited only to that which is determined necessary after sufficient findings have been established in the record.

The no-contact order in issue here contradicts the principles enunciated in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 477 (1981). In overturning a no-contact order issued in a class action, the Supreme Court noted that such orders must be based on a clear record and "specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *See id.* at 101. The order resulting from such a process should be carefully drawn in order to limit speech as little as possible. *See id.* at 102.[4]

The order in this case bars all contact between NPP attorneys and class members regarding the subject matter of the class action, i.e. prison conditions, treatment, and healthcare. The order is not narrowly drawn nor is it justified by any factual findings other than that seven of 167 inmates returned letters from Welch unopened (during the period before the district court ruled on the substitution motion) and that NPP attorneys, like Welch himself, managed "small favors" for the

---

[4]Because the Supreme Court found that the order in issue was an abuse of discretion and did not comport with the requirements of Rule 23, it did not decide the issue of First Amendment requirements for such orders; it did note, however, that the order created serious restraints on expression, *see id.* at 103-04, and therefore presumably could be the basis of a constitutional challenge should one prove necessary.

class members.

The class members who wish to remain in contact with NPP attorneys seek to exercise their right as individuals to consult with the counsel of their choice on matters of great concern to them. *See Texas Catastrophe Property Ins. Assoc. v. Morales*, 975 F.2d 1178, 1180-81 (5th Cir. 1992) (finding a fundamental right to retain counsel of choice in civil actions); *see also Mitchell v. Johnson*, 701 F.2d 337, 351 (5th Cir. 1983) (the district court is not free to "substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests")(citation omitted). The district court is not free to impinge on those rights without weightier findings than those here; the findings in the record below do not establish the necessity for the order issued. Moreover, a limiting order must be narrowly drawn to minimize prior restraints on speech, association, and the inmates' rights to counsel. The no-contact order in this case does not satisfy these requirements and we therefore vacate it.

B. *Denial of intervention/substitution of counsel*

Appellants argue that the district court erred in denying the motions for substitution of counsel and intervention because at least eighty percent of the class members supported substitution and Welch was not adequately performing his duties. Denials of motions for substitution of counsel are reviewed for

12

abuse of discretion.  *See Pettway v. American Cast Iron Pipe Co.*,

576 F.2d 1157,1178 (5th Cir. 1978).  We treat appellants' motion

for intervention as one for intervention as of right under

Fed.R.Civ.P. 24(a).  The denial of that motion is reviewed de

novo.  *See Edwards v. City of Houston*, 78 F.3d 983, 999-1000

(5th Cir. 1996) (en banc).  The facts of this case justify a

finding that the district court committed reversible error under

either standard in denying the motions for substitution and/or

intervention.[5]  We therefore reverse the denial of the motion for

---

[5]The state of Mississippi challenges this Court's jurisdiction to review the district court's denial of petitioner's motion to substitute counsel as an appealable final order pursuant to 28 U.S.C. § 1291.  This Court, however, need not reach the issue of whether the petitioner's post-judgment motion to substitute counsel is independently appealable.  There is no dispute that the district court's no-contact order is properly before this Court.  In the district court's February 1 order prohibiting the ACLU from contact with any inmate on matters within the jurisdiction of class counsel, the magistrate also denied the renewed motions for intervention and substitution of counsel.  On February 11, the petitioners filed a timely notice of appeal of all rulings in the February 1 order.

Where this Court has interlocutory jurisdiction over an injunctive order pursuant to § 1292(a)(1), it may, in its discretion, consider all aspects of that order.  *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091 (5th Cir. 1973); *Magnolia Marine Transport v. LaPlace Towing Corp.*, 964 F.2d 1571, 1580 (5th Cir. 1992) ("[A]n order granting or refusing an injunction brings before the appellate court the entire order . . ."); *Gould v. Control Laser Corp.*, 650 F.2d 617, 621 n. 7 (5th Cir. 1981) ("[I]n reviewing interlocutory injunctions we may look to otherwise nonappealable aspects of the order."); *Myers v. Gilman Paper Corp.*, 544 F.2d 837, 847 (5th Cir. 1977) ("It is well settled that an appellate court that has jurisdiction over an interlocutory order containing injunctive relief may reach and decide other aspects of that order even though the others would not be reviewable independently by interlocutory appeal"); 16 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3921.1 (2d ed. 1996).  We

13

substitution.[6]

Two main factors support substitution of counsel in this case.  First, the sentiments of the class indicate a clear preference for a known substitute, i.e. the NPP attorneys.  Second, and more importantly, Welch's nonfeasance and the constraints upon his ability adequately to prosecute the sub-class' case urge the rare remedy of substitution.  District courts normally enjoy substantial latitude in deciding motions for substitution of counsel.  In long-standing class actions, in particular, significant administrative difficulties could arise from frequent or competing motions for substitution or intervention, and we in no way wish to encourage the unjustified

recognize that this discretion should be exercised "only in rare and unique circumstances."  *Gros v. City of Grand Prairie*, 209 F.3d 431, 436 (5th Cir. 2000).

In this case, judgment has already been entered in the form of a consent decree.  Nothing is currently pending before the district court, save its continuing jurisdiction over the decree.  Given the procedural posture of this case, we feel it is appropriate to exercise our discretion and review the petitioner's motion to substitute counsel.  Absent the exercise of our discretion, the petitioners will be deprived of any meaningful opportunity to have their motion reviewed.

We do not overlook, nor do we agree with the dissent that we should be bound by, the Tenth Circuit's holding in *Arney v. Finney*, 967 F.2d 418 (10th Cir. 1992).  By exercising our pendent appellate jurisdiction, we do not address the issue decided in *Arney*, that is, whether a Court of Appeals has independent jurisdiction over a motion to substitute counsel.

[6]According to appellants' description, the motion for substitution and the motion for intervention sought to attain the same practical result, i.e. representation by NPP attorneys in the class action.  Because we reverse the district court's denial of the motion for substitution, intervention becomes unnecessary.

14

use of such motions.  Mere dissatisfaction with class counsel's strategy or obtained results does not adequately support a motion for substitution of counsel.  Nonetheless, the unique circumstances of this case do warrant substitution.

Appellees first urge that the class members' motions for intervention and substitution of counsel were untimely.  However, such motions made during the ongoing administration of a class action settlement by a district court are not per se untimely. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394-96 (1977) (putative class members' post-judgment motion to intervene was timely filed).  The district court did not reject the motions as untimely, nor do we.

In *Pettway*, this Court reversed a denial of a motion for substitution of counsel where seventy percent of the class supported it, noting that class counsel may not substitute his own subjective judgment for that of the class on major questions of litigation.  *See Pettway*, 576 F.2d at 1177.  In this case, at least eighty percent of the class supported substitution. Welch's own words in letters to the class explain his deliberate intent to use his own subjective judgment regarding the objectives and appropriate relief for the class even as against a majority of the class members' explicit wishes.  Thus, Welch's behavior is of a type that we recognized in *Pettway* as justifying substitution of counsel.

15

Welch's nonfeasance and mishandling of certain aspects of the case also warrant his substitution here.  First, Welch is a solo practitioner with limited resources.  Such a fact does not on its own justify substitution of counsel – numerous solo practitioners have demonstrated their ability and zeal in prosecuting even very large class actions.  However, in this case, Welch's resources were already stretched by his representation of the *Gates* class as well as numerous other subclasses.  More importantly, Welch's own admissions demonstrate his subjective belief that he was unable actively to prosecute the HIV-positive prisoners' claims.[7]  His failure to secure outside expert review of the subclass members' medical care, even after this Court specifically noted the necessity of such review on a previous appeal, corroborates the limits of Welch's resources and ability to litigate the HIV-positive prisoners' case.

Appellants also argue that Welch has a conflict of interest inherent in his dual representation of the HIV-positive prisoners and of the general prison population in *Gates* because segments of that population might object to the HIV-positive prisoners gaining access to work training and other programs from which

_____

[7]In letters to the class and to the ACLU soliciting their assistance, Welch described the limitations of his resources as a solo practitioner with no regular assistance and without the resources to hire expensive experts.

16

they are currently excluded. Welch disputes the existence of such a conflict, and the district court agreed with him, ruling that there was no apparent conflict of interest. The allegation of a conflict of interest is not self-evident; there is no necessary or inherent conflict between the objectives of the HIV-positive subclass and that of the general population. However, Welch explained to the class in responding to complaints about his inaction that he refrained from taking aggressive action on their desegregation claims in part because he feared the general population would object to it. We therefore have a direct admission by counsel that his advocacy was in fact impaired, at least at one time and as to one set of issues. That admission erases any doubt that would otherwise exist regarding conflict of interest difficulties faced by counsel.

Evidence of nonfeasance and mishandling of certain aspects of the case and the lawyer-client relationship also exists. The record indicates that Welch failed to give the class adequate notice and opportunity to object to the settlement he procured for them in 1995.[8] *See Kincade v. General Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) (notice and opportunity to object

---

[8]Welch mailed copies of the proposed agreement to the class representatives and certain class members at the same time as the proposed agreement was filed with the court. Welch also requested that the district court direct him as to appropriate notice under Rule 23(e), which it declined to do. The district court accepted the proposed agreement within days of its being filed and before any objections from class members reached the court.

17

to settlement required for Rule 23(b)(2) classes).

Welch's relationship with members of the subclass deteriorated over time, particularly after the motions for intervention and substitution were filed. For example, Welch disclosed confidential communications from a class member in the public record. While Welch argues that he was entitled to disclose communications relevant to a claim against him, a motion for substitution does not constitute a classical "claim" against an attorney as would a malpractice suit. In addition, Welch apparently made no effort to redact the letter or limit it to in camera review. *See* MISS. RULES OF PROFESSIONAL CONDUCT Rule 1.6(a) and Cmt. (1999) (where disclosure is authorized to defend against a claim or assertion of wrongdoing, "the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure"); *Flowers v. State*, 601 So.2d 828, 832 (Miss. 1992)(lawyer may not reveal confidential communications without client's consent); *Singleton v. Stegall*, 580 So.2d 1242, 1245 (Miss. 1991) (lawyer owes duty of confidentiality to her client).

Welch also described the subclass in the national press as being "manipulative." He was further quoted as saying that he had no sympathy for them and that they used their HIV status to

18

garner the sympathy of the public. During the hearing on the motion for preliminary injunction prepared by NPP attorneys and joined by him, Welch appeared to take MDOC's side, conducting a cross-examination style interrogation of plaintiffs' expert witness. Such behavior undermines both an attorney's credibility with his clients and the chances of a successful motion.

Welch argues that the denial of substitution was not an abuse of discretion because the presumption of adequate representation identified in *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) was not overcome. We note, however, that the burden of showing that the presumption of adequacy should be overcome is "minimal," *id.*, and the facts noted above do overcome such a presumption as regards Welch's representation of this particular subclass. Welch's arguments regarding the adequacy of his representation essentially demonstrate his belief that a cooperative rather than combative style of advocacy is preferable in this case. We in no way disagree with the proposition that a cooperative style can accomplish more in some circumstances than an overly hostile and aggressive one.[9]

---

[9]The governmental defendants have endorsed Welch in preference to the NPP attorneys, noting the good working relationship Welch has established with MDOC. Such a relationship can be very valuable in ongoing litigation such as this, though it can also sometimes blur the lines of the adversary relationship, as when Welch conducted a cross-examination style interrogation of plaintiffs' expert. While we note that the relationship between Welch and NPP attorneys soured over time (Welch originally solicited their help with the case; he argues that after that point

19

However, Welch's actions, the constraints inherent in his situation, and the deteriorated state of his relationship with his clients necessitate his substitution as counsel.

C.   *Motion for attorneys' fees*

Appellants argue that even though they were unsuccessful in their motions for substitution and intervention, they are nonetheless entitled to attorneys' fees because they succeeded in securing a preliminary injunction that requires MDOC to change the care it provides to HIV-positive inmates.  Appellees contend that because the ACLU was never made counsel of record, it should not receive attorneys' fees even if it provided all of the labor and expertise behind the successful motion for preliminary injunction.  District courts have broad discretion in determining whether to award attorneys' fees, and the denial of  fees is reviewed for abuse of that discretion.  *See Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

Appellees argue, under *Morales v. Turman*, 820 F.2d 728. 731 (5th Cir. 1987), that only parties to the litigation may receive attorneys' fees under the Civil Rights Attorney's Fee Awards Act

---

NPP attorneys did not keep him adequately informed of their investigation on behalf of the class), our decision does not rest on the difference between contrasting styles or an assessment of the relationship among counsel.  Rather, our evaluation of the objective facts in this case leads to the inescapable conclusion that whatever the merits of his efforts, Welch's ability to represent the subclass in issue has sufficiently deteriorated such that substitution is now necessary.

of 1976 and § 1983.  *See also Cook v. Powell Buick, Inc.*, 155 F.3d 758, 761 (5th Cir. 1998) (unsuccessful intervenors in a class action did not become party litigants in the suit and therefore could not appeal anything other than the denial of their motion to intervene).  Our decision regarding the motions for substitution and intervention may affect the viability of that argument, though it remains true that given its prior rulings, which we set aside today, the district court was justified at the time in denying attorneys fees to the unsuccessful movants.

Turning to the merits of the issue, appellants argue that because the preliminary injunction achieved their primary objectives in making the motion even if it did not reflect in precise detail the relief sought they should be entitled to fees as a matter of ordinary practice.  *See Tasby v. Estes*, 651 F.2d 287 (5th Cir. 1981) (holding that attorneys who were not counsel of record in the litigation but who were retained by parties and who performed beneficial and non-duplicative work in the litigation were entitled to attorneys' fees).

While it would have been within the district court's discretion to award fees to appellants, it is not therefore necessarily an abuse of discretion to deny them.  The NPP attorneys knew when they advanced the motion for preliminary injunction that there was some risk that they would not become

21

the counsel of record for the plaintiff class.

The order denying attorneys fees only states that it does so because the NPP attorneys never became counsel of record to any recognized party to the action.  While there may be other reasons that would prompt the district court, in its discretion, to deny fees to the NPP attorneys, it did not have the benefit of our holding on the substitution/intervention issue before it at the time it denied the fee application.  We therefore vacate the order denying attorneys fees and remand the issue of fees for reconsideration in light of our holdings here and the entire record of the litigation.[10]

### III. *Conclusion*

While district courts enjoy substantial latitude in managing class action litigation, the trial court in this case erred in denying the motions for substitution and intervention and in promulgating its no-contact order.  Accordingly, we VACATE the no-contact order, REVERSE the denial of the motion for substitution of the NPP attorneys with direction that they be substituted for attorney Welch to represent the subclass of HIV positive inmates, and VACATE and REMAND the issue of attorneys fees to the district court for further consideration.

---

[10]The appellants' motion to supplement the record is denied. The appellants' motion to expedite decision is dismissed as moot. Finally, the appellees' request for mandamus is denied.

22

EDITH H. JONES, Circuit Judge, dissenting:


        With due respect to my colleagues, this Court does not
have jurisdiction to review the interlocutory order denying
substitution of counsel simply because it was entered
contemporaneously with the no-contact order.  We should be bound
by the Tenth Circuit's decision, following Supreme Court
precedent, that it lacked jurisdiction in a case on point.  The
majority's approach can only be viewed as an ill-conceived
exercise of the dubious doctrine of pendent appellate
jurisdiction.

        The Tenth Circuit held that it lacked jurisdiction to
review a termination of counsel motion in a case strikingly
similar to this one.  In *Arney v. Finney,* 967 F.2d 418, 422 (10th
Cir. 1992), prisoners brought a class action challenging prison
conditions.  Class counsel was appointed and the district court
entered a consent decree.  When some prisoners became
dissatisfied with the enforcement of and modifications to the
consent decree, they sought to intervene and replace counsel.  A
majority of the class members supported the motion, but the
district court denied it.  *See Arney*, 967 F.2d at 420-21.

        The appeals court held that even though it could review
the order denying intervention of class members, it did not have

23

jurisdiction to consider the motion to terminate counsel. It applied the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 375 (1981), holding that an order denying disqualification of counsel is not appealable. *See also Shakman v. Democratic Org. of Cook County*, 919 F.2d 455, 459 (7th Cir. 1990) (under *Firestone,* an order denying substitution of counsel is not appealable).

This case is substantively identical to *Arney*. It is a prisoner class action suit. There is an existing consent decree. The intervenors are situated identically with the rest of the class. A majority of the class have signed a petition to substitute counsel. The district court has denied a motion to intervene and substitute counsel. The jurisdictional ruling in *Arney* should control this case.

The majority overlooks *Arney* and asserts that we have jurisdiction because the district court enforced its substitution of counsel order with a no-contact order against the ACLU, a non-party. The majority avoids the term pendent appellate jurisdiction ("PAJ"), but that is what they are exercising. The theory of pendent appellate jurisdiction is that an appellate court may, on review of an appealable interlocutory order, also assume jurisdiction over an otherwise non-appealable order. *See Swint v. Chambers County Comm.*, 514 U.S. 35, 44 n.2 (1995)

(citing as an example of PAJ a case where the Ninth Circuit reviewed a nonappealable claim along with a preliminary injunction*, see Transworld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676 (9th Cir. 1990)); *Law v. NCAA*, 134 F.3d 1025, 1028 (10th Cir. 1998) (using PAJ analysis to decide what claims are reviewable with an injunction); *Chambers v. Ohio Dept. of Human Svcs*, 145 F.3d 793, 797 (6th Cir. 1998) (same); *California v. Campbell*, 138 F.3d 772, 778 (9th Cir. 1998) (same).

I believe that in the unlikely event that pendent appellate jurisdiction continues to exist at all, the interlocutory denial of substitution of counsel may not be appealed on the coat-tails of the no-contact order.

The Supreme Court cast considerable doubt on PAJ in *Swint*. In that case, the Eleventh Circuit claimed that it had discretion to review nonappealable issues with a collateral order. The Supreme Court reversed, observing that Congress carefully limited the scope of interlocutory review and established specific procedures to determine when appeals courts can review an interlocutory order. *See id.* at 46-48. It questioned whether federal appeals courts can circumvent congressional intent by expanding appellate review through PAJ. *See id.* at 46-47. The Court did not conclusively decide "whether

25

or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related [nonappealable] rulings." It did hold that the Eleventh Circuit abused discretion by applying PAJ where the appealable order and the nonappealable order were not inextricably intertwined.

In the aftermath of *Swint*, courts have been hesitant to exercise PAJ. Chief Judge Posner has observed that PAJ "hangs by a thread." *See In re Rimsat v. Hilliard*, 98 F.3d 956, 964 (7th Cir. 1996) (avoiding PAJ and finding appellate jurisdiction through another doctrine). This Court has described PAJ after *Swint* as "uncharted terrain." *See Cantu v. Rocha*, 77 F.3d 795, 805 (5th Cir. 1996) (finding no compelling reason to navigate the wilderness). We exercise it "only in rare and unique circumstances." *Gros v. City of Grand Prairie*, 209 F.3d 431, 436 (5th Cir. 2000) (finding no unique circumstances). By looking only to pre-*Swint* authority to justify its jurisdiction, the majority fails to recognize that appellate courts can no longer freely consider all aspects of an injunctive order.

*Swint* establishes that, at best, this Court might be able to review the order denying substitution of counsel if it is inextricably intertwined with the no-contact order, but a common basis of operative fact does not alone satisfy that standard.

This Court has suggested that if an appeals court can resolve appealable orders separately from the nonappealable orders, the orders are not inextricably intertwined. *See Gros*, 209 F.3d at 437 (finding that a qualified immunity claim was not inextricably intertwined with non-immunity claims because the claims had "unique elements and relevant facts.").

Other circuits agree that claims are inextricably intertwined only if "the pendent claim is coterminous with, or subsumed in, the claim before the court on interlocutory appeal." *Law v. NCAA*, 134 F.3d 1025, 1028 (10th Cir. 1998) (finding claims inextricably intertwined in a PAJ claim based on a permanent injunction). *See also Chambers v. Ohio Dept. of Human Svcs*, 145 F.3d 793, 797 (6th Cir. 1998) (same). "Given the Supreme Court's criticism of pendent appellate jurisdiction, the Court's 'inextricably intertwined' exception should be narrowly construed." *California v. Campbell*, 138 F.3d 772, 778 (9th Cir. 1998) (holding that it could easily address the appealable claim without discussing the nonappealable claim).

Here, the elements of the constitutional claim challenging the no-contact order are distinct from the elements of the substitution of counsel challenge. First, different parties are involved: ACLU alone is aggrieved by the no-contact order, while the denial of substitution order bears only on the

27

prisoners.  Second, the constitutionality of the no-contact order is entirely unrelated to the merits of the class attorney's performance.  This Court could easily lift the no-contact order while leaving the substitution of counsel order intact.  Thus, the orders are not inextricably intertwined and PAJ, even if it has vitality, is inappropriate.[11]

The majority's unarticulated premise for assuming jurisdiction seems to be that appellate requirements may have to be relaxed in a post-judgment context.  In other words, how could any order denying substitution of counsel in institutional litigation governed by a consent decree ever become final for appeal?  The Tenth Circuit affords one answer.  In a prison conditions case, it granted mandamus relief requiring the district court to consider a pro se prisoner's challenge to the application of the decree that class counsel had refused to review.  *See Mcneil v. Guthrie*, 945 F.2d 1163 (10th Cir. 1991).

---

[11]     The majority might have suggested that PAJ would exist because the orders denying intervention of new class representatives and the denial of counsel substitution are "intertwined." This conclusion would fail for two reasons. First, the prisoners seek only permissive intervention (F.R.A.P. 24(b)), since their interests are not adverse to but cumulative of the present class representatives. *See Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ("The applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption [of adequate representation"). Appellate jurisdiction exists over the denial of permissive intervention only if the district court abused discretion. *See id*. at 992, in denying such relief. Second, the current class representatives are appealing the order denying substitution; tacking that order onto the intervention order for PAJ is a meaningless exercise.

Mandamus relief may thus be available where an order is not otherwise reviewable on appeal.

If we did have jurisdiction over this appeal, I would be hard put to subscribe to the majority's appellate factfindings on Welch's performance as class counsel, much less to hold the magistrate judge's decision an abuse of discretion.[12] Each of the "facts" that the majority finds concerning Welch's alleged nonfeasance and conflicts was vigorously contradicted by Welch's declarations and evidence or was placed by his responses in a context that exonerated him from the dissident prisoners' complaints.[13] The district court implicitly credited Welch's version of events, yet the majority discredits Welch without demonstrating clear error. I would have deferred to the trial court's credibility calls. At least, the majority should have remanded for a hearing, in light of the perfunctory trial court ruling, to permit Welch to confront his accusers before the panel majority required the unusual and reputation-damaging remedy of counsel substitution.

---

[12] When brought up on appeal as part of a final judgment, denials of motions to substitute class counsel are reviewed for abuse of discretion. *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1178 (5th Cir. 1978). The majority opinion is needlessly ambiguous on this point.

[13] The majority faults Welch for revealing to the court some of his letters to and from the class representatives during the dispute over substitution. Welch points out, however, that the class representatives had themselves waived confidentiality by delivering this same correspondence to the ACLU.

The majority's jurisdictional error and their rush to overturn the district court's discretionary decision carry unfortunate implications in many ongoing prison conditions cases. This decision will encourage dissident prisoner groups to second-guess class counsel and seek separate representation, effectively harassing class counsel and wasting precious public resources on tangential issues. Properly applied standards of appellate jurisdiction would eliminate this problem. I respectfully dissent.