Kenyatta **MADDOX, et al., on behalf of themselves and all those persons similarly situated who consent to representation, Plaintiffs,**

v.

**KNOWLEDGE LEARNING CORPORATION, Defendant.**

**Civil Action No. 1:07–CV–808–CAP.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 3, 2007.

Allan Leroy Parks, Jr., Andrew Yancey Coffman, Eleanor Mixon Attwood, Parks, Chesin & Walbert, Kevin S. Little, Brownstein Nguyen & Little LLP, Atlanta, GA, Jay Daniel Brownstein, Brownstein Nguyen & Little LLP, Tucker, GA, for Plaintiffs.

Timothy M. Watson, Seyfarth Shaw, Houston, TX, Brett Christopher Bartlett, Cheryl Barnes Legare, Louisa J. Johnson, Seyfarth Shaw, Frank Barry Shuster, Constangy Brooks & Smith, Atlanta, GA, for Defendant.

## ORDER

CHARLES A. PANNELL, JR., District Judge.

This matter is before the court on defendant Knowledge Learning Corporation's emergency motion for a cease and desist order [Doc. No. 9].

### Procedural Background

This case, filed on April 11, 2007, is a proposed collective action for unpaid overtime wages under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") [Doc. No. 1]. The case is still in the early stages of discovery. On June 25, 2007, defendant Knowledge Learning Corporation ("KLC") filed an emergency motion for a cease and desist order regarding the plaintiffs' communication with putative class members through the website *www. kindercareovertimecase.com.* The website encouraged KLC employees across the country to contact plaintiffs' counsel to join the case [Doc. No. 9]. KLC alleged that the website contained numerous factually inaccurate or misleading statements and requested that the court order the site shut down. The court entered an order on June 29, 2007, instructing the plaintiffs to temporarily remove the website pending an accelerated period of briefing on the issue [Doc. No. 10]. The plaintiffs complied with the order and submitted a response to the motion on July 2, 2007 [Doc. No. 11]. The defendant submitted a reply on July 20, 2007 [Doc. No. 32]. The issue is now fully briefed and ripe for consideration.

### Legal Analysis

Section 216(b) of the FLSA provides that an employee may bring an action for himself and other employees "similarly situated." 29 U.S.C. § 216(b). Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to notify the court of their desire to opt *in* to the action. *Anderson v. Cagle's Inc.,* 488 F.3d 945, at 950 n. 3 (11th Cir.2007) (citing 29 U.S.C. § 216(b)). Unfortunately, Section 216(b) gives little guidance as to the exact nature of a "collective action" or the appropriate procedure for gathering the necessary written consents. *Garner v. G.D. Searle Pharmaceuticals & Co.,* 802 F.Supp. 418, 421 (M.D.Ala.1991); *accord Sperling v. Hoffmann–LaRoche, Inc.,* 118 F.R.D. 392 (D.N.J.1988) (finding statute and legislative history "wholly silent" on issue of notice and court involvement), *aff'd in part and dismissed in part,* 862 F.2d 439 (3rd Cir.1988), *aff'd,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Shushan v. University of Colorado,* 132 F.R.D. 263, 266 (D.Colo.1990) (finding statute "vague" and legislative history "equally unilluminating").

In *Hoffmann–La Roche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the United States Supreme Court clarified the authority of district courts to facilitate notice to potential class members.[1] The Court held that "[b]ecause trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171, 110 S.Ct. 482. The Court rea-

---

1. *Hoffmann–La Roche* involved a suit brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et *seq.* ("ADEA"). Section 7(b) of the ADEA incorporates the en-

forcement provisions of the Fair Labor Standards Act, including 29 U.S.C. § 216(b). 29 U.S.C. § 626(b).

soned that a district court's involvement in the notice process would "ensure that [the process] is timely, accurate, and informative." *Id.*

The instant action is in its earliest stages, however, and has not yet reached the conditional certification/notice period to which *Hoffmann–La Roche* is relevant.[2] The Supreme Court noted in *Hoffmann–La Roche* that "[c]ourt intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims," and cautioned that courts do not have "unbridled discretion" in managing collective actions. *Id.* at 174, 110 S.Ct. 482. The Court did not reach the issue of the district court's authority to manage *pre*-notice solicitations of potential claimants. *Id.*

◼ In the context of Rule 23 class actions, the Supreme Court has held that parties or their counsel should not be required to obtain prior judicial approval before communicating in a pre-certification class action, except as needed to prevent serious misconduct. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 94–95, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). An order restricting pre-certification communications must be based on "a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," or run the risk of imposing an unconstitutional prior restraint on speech. *Id.* at 101, 101 S.Ct. 2193. In fact, this court's Local Rule 23.1 provides, absent the par-

ties' agreement otherwise, "neither the parties nor their counsel shall initiate communications with putative class members regarding the substance of the lawsuit until counsel presents the required report to the court and any necessary order is entered pursuant to the report." L.R. 23.1(C)(2). The local rule additionally prohibits parties from communication with "prospective or actual class members in a way which tends to misrepresent the status, purpose, and effects of the action or any actual or potential court orders therein, which may create impressions tending without cause to reflect adversely on any party...." L.R. 23.1(C)(3)(b). Of course, it is apparent from the Local Rule's numbering that it is intended as a corollary of Federal Rule 23; the plaintiffs correctly note that Rule 23 provisions do not apply to Section 216(b) collective actions. *See Grayson v. K Mart Corp.,* 79 F.3d 1086, 1106 (11th Cir.1996) ("[i]n creating a collective action procedure for ADEA actions, Congress clearly adopted the opt-in joinder procedures of Section 216(b) of the FLSA and thus impliedly rejected the Rule 23 class action procedures applicable to Title VII actions"); *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir.1975) (holding that Rule 23 and § 216(b) actions are "mutually exclusive and irreconcilable").

The smattering of lower courts to have addressed the issue have taken a similar approach to that outlined in *Gulf Oil:* relying upon their broad case management

---

**2.** The Eleventh Circuit has endorsed a two-tiered approach to determining whether to certify a collective action under Section 216(b). The first determination is made at the so-called "notice stage," where the district court makes a decision—usually based only on the pleadings and affidavits which have been submitted—whether notice of the action should be given to potential class mem-

bers. This determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." *Hipp v. Liberty National Life Insurance Co.,* 252 F.3d 1208, 1218 (11th Cir.2001).

discretion[3] to generally allow pre-notice communications while actively limiting misleading statements in such communications. *See, e.g., Piper v. RGIS Inventory Specialists, Inc.,* No. C–07–00032 (JCS), 2007 WL 1690887, at *7–8, 2007 U.S. Dist. LEXIS 44486, at *24 (N.D. Cal. June 11, 2007) (holding courts may limit pre-notice communications where a party has engaged in misleading or improper communications or where they are inconsistent with court-authorized notice); *Vogt v. Texas Instruments Inc.,* No. 3:05–CV–2244–L, 2006 WL 4660133, 2006 U.S. Dist. LEXIS 96515 (N.D.Tex. Aug. 8, 2006) (prohibiting use of flyer and e-mail deemed misleading while allowing a mailing to potential class members that contained factual information, was marked "advertisement," and was modeled after court-authorized notice in another case); *Melendez Cintron v. Hershey Puerto Rico, Inc.,* 363 F.Supp.2d 10, 19 (D.P.R.2005) (refusing to sanction plaintiffs for pre-certification letter to potential class members that did not make false representations and was not misleading).

Courts have been mindful not to run afoul of plaintiffs' and their lawyers' free speech rights in their restrictions of pre-notice communications. "Although the court has broad authority to manage the collective action, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members." *Belt v. Emcare Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003). "Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties." *Id.* The Constitution accords a lesser protection to commercial speech—such as communications to potential class members—than to other constitutionally guaranteed expression. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). "In general, an order limiting communications regarding ongoing litigation between a class and class opponents will satisfy first amendment concerns if it is grounded in good cause and issued with a heightened sensitivity for first amendment concerns." *Kleiner v. First National Bank,* 751 F.2d 1193, 1205 (11th Cir.1985) (citation and internal quotation omitted). Courts examine four criteria to determine good cause: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [ 3] the availability of a less onerous alternative; [4] and the duration of the order." *Kleiner,* 751 F.2d at 1206 (citing *United States Postal Service v. Athena Products, Ltd.,* 654 F.2d 362, 367–68 (5th Cir. Unit B 1981)).

Little guidance from the Eleventh Circuit exists on the issue of pre-certification solicitations. In *In Re Cavucci,* No. 99–11704–J (1999), an unpublished, non-precedential opinion, the plaintiffs in an FLSA class action in Florida petitioned the Eleventh Circuit for a writ of mandamus to prevent the district court from enforcing a local rule prohibiting communication with class members without court approval.[4] The plaintiffs also appealed the district court's denial of permission to communi-

---

**3.** *See Hoffmann–La Roche,* 493 U.S. at 171, 110 S.Ct. 482; *see also Gates v. Cook,* 234 F.3d 221, 227 (5th Cir.2000) ("district courts enjoy wide latitude in managing complex litigation in general and class actions in particular.").

**4.** The local rule at issue, Middle District of Florida Rule 4.04(e), is analogous to this court's Rule 23.1.

cate ex parte with potential class members. *Id.* at 1–2. The Eleventh Circuit held that the local rule applied only to class actions brought under Rule 23, but upheld the district court's denial of permission for ex parte communication as falling within its discretion under *Hoffmann–La Roche* to facilitate—or *not* to facilitate—notice. *Id.* at 2–3. In a footnote, however, the court stated that "the court's refusal to exercise its discretion in this instance does not prevent petitioners from contacting potential plaintiff's without the court's approval." *Id.* at 3 n. 3. This court interprets *Cavucci* to stand for the proposition that while a district court may refuse to facilitate notice, it may not bar plaintiffs altogether from communicating with class members.

A recent decision from another judge in this court seems to comport with this interpretation. The defendant in an FLSA action, *Taylor v. CompUSA,* No. 1:04–CV–718–WBH, 2004 WL 1660939, 2004 U.S. Dist. LEXIS 14520 (N.D. Ga. June 29, 2004), moved the court to prevent the plaintiffs from sending unauthorized e-mail messages to potential class members notifying them of the action. *Id.* 2004 WL 1660939, at *3, 2004 U.S. Dist. LEXIS at *11. Judge Hunt held that the plaintiffs were not required to rely on court-facilitated notice to notify potential opt-in plaintiffs of the action. *Id.* 2004 WL 1660939, at *3, 2004 U.S. Dist. LEXIS at *12 (citing *Tucker v. Labor Leasing,* 872 F.Supp. 941, 949 (M.D.Fla.1994) (noting that "[section] 216(b) does not require parties to obtain judicial approval before seeking to locate other 'similarly situated' persons … it is not the court's role to prohibit plaintiffs from attempting to gather these consents")). However, Judge Hunt was "troubled by the fact that the messages contain factual and legal conclusions that may mislead potential plaintiffs as to their eligibility to participate in the action and the extent of [the defendant's] potential liability." *Id.* 2004 WL 1660939, at *3, 2004 U.S. Dist. LEXIS at *12. Accordingly, he held that until the court ruled on conditional certification and approved official notice, the plaintiffs were prohibited from making "unqualified, misleading statements" to potential class members. *Id.*

■ In light of the caselaw from this and other circuits, the court takes the view that it would be an abuse of discretion to totally proscribe plaintiffs in a Section 216(b) collective action from communicating with potential class members through a website or other means prior to conditional certification. The same caselaw also indicates, and this court holds, that it *is* within the court's discretion to prohibit the plaintiffs from issuing pre-certification statements that are factually inaccurate, unbalanced, or misleading. Thus, the court will deny KLC's motion to the extent it requests that the court order the plaintiffs' website totally shut down. The court will, though, grant the motion to the extent that it will order the plaintiffs to correct certain statements on the website that it deems to be inappropriate. These limitations are "grounded in good cause and issued with a heightened sensitivity for first amendment concerns." *Kleiner,* 751 F.2d at 1205. The statements to be amended are as follows:

1. **"Each Plaintiff was paid on an hourly basis, was required to work more than 40 hours per week, and did not receive overtime as required by law."**

■ KLC argues, and the court agrees, that this statement portrays as undisputed a fact that is, indeed, strongly disputed by KLC. Accordingly, the plaintiffs are instructed to clarify this statement by inserting the phrase "the lawsuit alleges that" at the beginning of the sentence, and by in-

cluding the sentence "Knowledge Learning Corporation denies this allegation" afterwards.

2. **Positions eligible to participate include Administrative Assistant, Program Specialist, Center Director, Assistant Center Director, Infant Teacher, Toddler Teacher, 2–Year Old Teacher, 3–Year Old Teacher, After–School Teacher, Pre–K Teacher, Assistant Teacher, Phonics Teacher or Health and Safety Teacher.**

3. **Current and former employees who worked for any of KLC's centers are eligible to join this case and seek payment for overtime.**

■ The court agrees with KLC's argument that these two statements are inappropriate. The court has not yet conditionally certified *any* class of plaintiffs in the case; therefore, the plaintiffs' statements regarding the "eligible" positions are misleading. The plaintiffs are thus instructed to insert the words "that may be" after the word "Positions" in Statement 2. The plaintiffs are instructed to remove Statement 3 in its entirety.

4. **In order for you to be eligible to assert a claim in this case, the following must apply: ... (3) You execute a written consent form agreeing to join this case and be represented by Plaintiffs' attorneys.**

■ This statement is inappropriate in that it fails to notify potential plaintiffs of their right to retain the counsel of their choosing. *See Perry v. National City Mortgage, Inc.*, No. 05–cv–891–DRH, 2007 WL 1810472, at *5, 2007 U.S. Dist. LEXIS 45115, at *15 (S.D. Ill. June 21, 2007) (ordering notice amended to include phrase "otherwise, you may seek legal advice from an attorney of your choice at your own expense."). The plaintiffs are accordingly instructed to insert the following sentences at the conclusion of the section containing the statement in question: "You are not required to be represented by Plaintiffs' attorneys to opt-in to the lawsuit. You may retain the attorney of your choice to represent you."

5. **Even if KLC were to take any action against you, the lawyers in the case stand ready to combat any retaliation on your behalf.**

■ This statement inappropriately suggests that KLC is likely to retaliate against employees who join the lawsuit. The plaintiffs are therefore instructed to eliminate Statement 5 and substitute the following phrase: "KLC is prohibited by law from taking any action against you for participating in this lawsuit."

Finally, the court declines to accept the plaintiffs' invitation to approve court-facilitated notice at this time. The court will consider the form and content of any official notice only upon ruling on the plaintiffs' forthcoming motion for conditional certification.

### Conclusion

For the reasons stated herein, KLC's emergency motion for an order that the plaintiffs cease and desist unauthorized communication to putative class members [ Doc. No. 9] is GRANTED, IN PART, and DENIED, IN PART. The motion is GRANTED to the extent the plaintiffs shall be required to immediately make the changes detailed above to certain statements in the website *www.kindercare overtimecase.com*. The motion is otherwise DENIED, and the plaintiffs may re-activate the website.

SO ORDERED.