June BELT, on behalf of herself and on behalf of all others similarly situated, Plaintiff

v.

EMCARE INC., et al Defendants

No. 6:03–CV–73.

United States District Court,
E.D. Texas,
Tyler Division.

Dec. 18, 2003.

James A. Jones of Jones & Associates, Dallas, Richard Jennings Burch of Bruckner, Burch, PLLC, Houston, TX, for Plaintiffs.

Kimberly Nicholas Lucas of Kyle & Mathis, Ronald Eugene Manthey of Littler, Mendelson, PC., John T. Cox, III, of Lynn, Tillotson & Pinker, LLP, Dallas, TX, for Defendants Emcare, Inc., Texas EM–1 Medical Services, PA, St. Paul Erdocs, PA.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

This suit is proceeding under the Fair Labor Standards Act § 16(b), 29 U.S.C. § 216(b), as a nationwide collective action.

On October 1, 2003 the Court approved a form of notice to be sent to all absent class members (Docket No. 50). Shortly before Plaintiff mailed the Court's approved notice, Defendants sent their own, unapproved letter to absent class members. Thereafter, Plaintiff filed an Emergency Motion for Protective Order, Sanctions, and Corrective Notice (Docket No. 53). After considering the parties written submissions and oral argument, the Court **GRANTS** Plaintiff's motion and **ORDERS** sanctions and corrective notice consistent with this opinion.[1]

## BACKGROUND

This case is a "collective action" under the Fair Labor Standards Act ("FLSA"), similar to a class action prosecuted under Federal Rule of Civil Procedure 23. Plaintiff seeks to represent a class of Nurse Practitioners and Physician's Assistants who were allegedly not paid overtime wages in violation of 29 U.S.C. § 207(a)(1).[2] A collective action, like a class action, prevents piecemeal litigation, inconsistent adjudications, and difficult res judicata issues. *Donovan v. University of Texas at El Paso*, 643 F.2d 1201, 1206–07 (5th Cir.1981). However, unlike a class action, absent class members will not participate in the recovery (or be bound by the judgment) unless they specifically opt into the class upon receiving notice of the pending action.[3] *Cash v. Conn Appli-*

---

1. Attached to this opinion are three appendices: (A) the Court's official notice; (B) EmCare's unapproved letter; and (C) the corrective notice ordered pursuant to this Opinion.

2. In relevant part, 29 U.S.C. § 207(a) provides: "(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

3. The Court notes that it has preliminarily certified the class but has not yet conducted a final class certification. *See Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807, 2003 WL 22299997 (S.D.Tex.2003). However, the fact that the Court has not finally

*ances, Inc.*, 2 F.Supp.2d 884, 897 n. 32 (E.D.Tex.1997).

Throughout the substantial argument regarding the form of class notice, Defendants continually argued against allowing one party to have unrestricted access to the potential class members. For example, Defendants argued that the Court should deny Plaintiff's request for certain personal information regarding absent class members for fear that Plaintiff would "gain unrestricted access to potential plaintiffs and possibly influence their decisions whether to join this suit." Defendants' Joint Response Opposing Plaintiff's Motion to Approve Form of Notice, p. 6 (Docket No. 44). Similarly, Defendants also objected to the Court-approved notice appearing to be sent from Plaintiff's counsel. Defendants' Joint Sur–Reply to Plaintiff's Motion to Approve Form of Notice, p. 2 (Docket No. 46). Additionally, Defendants objected to Plaintiff's proposed website containing additional information regarding the current action because the information contained therein had not been previously approved by the Court. *Id.* at 3.

Responding to counsels' arguments, the Court crafted a form of notice incorporating proposals and suggestions from both Plaintiff and Defendants. After hearing argument and considering the parties' submissions, the Court rejected Plaintiff's short, simple notice in favor of a longer, more complicated notice in light of Defendants' concerns. Additionally, in response to Defendants' concerns that Plaintiff's

website might mislead absent class members, the Court granted Defendants notice and an opportunity to object to any substantive site changes. Although the Court denied Defendants' request to be responsible for sending the notice and to have their contact information included in the notice, the Court conceded to many of Defendants' other requests and ultimately ordered the parties to submit a joint agreed form of notice.

In spite of its own arguments against one party having unreviewed contact with absent class members and the Court's efforts to create a notice fair to all parties, Defendants unilaterally mailed their own letter to the absent class members just before the Court's sanctioned notice was to be sent. Defendant EmCare, with the assistance of its counsel, Ronald Manthey, drafted a letter to the absent class members presenting information regarding the suit. With no notice to the Plaintiff or to the Court, EmCare mailed this letter on or the day before it was to provide Plaintiff with the names and addresses of the potential class members to receive the Court-approved notice.

EmCare's letter misrepresented many of the issues in this action in such a way as to discourage absent class members from joining the suit. For example, the letter suggested that the current action was an attack on the potential plaintiffs' status as professionals.[4] Additionally, EmCare misrepresented the amount of damages available to the absent class members by ignor-

---

certified the class does not minimize the conduct at issue here because the Court has made a preliminary certification and has approved a form of notice to absent class members.

**4.** EmCare's letter declared that EmCare "believe[s] that the [absent class members] positions are exempt as professionals and that the

claims in this suit do not give appropriate consideration to the nature of the work performed by nurse practitioners and physicians assistants and the amount of independence, discretion, and professional judgment they exercise on a daily basis." Contrary to this statement's suggestion, this action does nothing to denigrate potential class members' workplace roles.

ing recoverable liquidated damages and attorneys fees. The letter incorrectly represented that Plaintiff sought only the overtime due for a forty-hour workweek as reduced by attorney's fees.

EmCare also tapped into fears and concerns perhaps held by many medical professionals.[5] First, EmCare, without any legitimate basis, equated this action with a medical malpractice suits despite the fact that it is a claim for unpaid wages.[6] Second, the letter's overall tone tapped into the possibility of the medical community's disfavor with the Plaintiffs' bar. For example, the letter declared that "Ms. Belt has hired a plaintiff's lawyer to ask a court to award her money," and that "some portion of the Court's award presumably will be paid to the Plaintiff's attorney as fees." Third, the letter suggested that this suit could endanger the potential class members' job stability when, in connection with discussing damages and attorneys fees, it declared that "it is unclear how the Court's rulings may impact clinical operations on a going forward basis."

## UNAPPROVED COMMUNICATIONS WITH POTENTIAL CLASS MEMBERS

 As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in § 216(b) collective actions. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Moreover, a court's authority to control counsels' conduct in a § 216(b)

collective action includes the authority to "manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil Company v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

 Although the Court has broad authority to manage the collective action, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members. Courts must base any order limiting communications between parties and potential class members on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of parties. *Id.* at 101, 101 S.Ct. 2193. Courts have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. *See Kleiner v. First Nat. Bank of Atlanta,* 751 F.2d 1193, 1206 (11th Cir.1985); *Burrell v. Crown Central Petroleum,* 176 F.R.D. 239, 244–45 (E.D.Tex.1997);

5. The Court does not intend to impugn any members of the medical community with its discussion of fears and preconceived ideas that certain medical professionals may have. However, the Court recognizes the reality that some members of the medical community carry the notions discussed in this opinion. More importantly, the Court recognizes that EmCare believes members of the medical

community carry the fears and concerns discussed in this Opinion and intentionally attempted to exploit them.

6. Specifically, the letter declared "this case is not unlike the medical malpractice lawsuits you may be familiar with, in that Ms. Belt has hired a plaintiff's lawyer to ask a court to award her money."

*Hampton Hardware, Inc. v. Cotter & Co., Inc.,* 156 F.R.D. 630, 632–33 (N.D.Tex. 1994). As commercial speech, ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for First Amendment Concerns. *Kleiner,* 751 F.2d at 1203; *Hampton Hardware, Inc.,* 156 F.R.D. at 633. Courts examine four criteria to determine good cause in this context: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order. *Kleiner,* 751 F.2d at 1203; *Hampton Hardware, Inc.,* 156 F.R.D. at 633.

In considering whether to limit Defendants' speech with absent class members, the Court, as noted above, first determines whether there is a need for limitation on speech and then tailors the limitations accordingly. Thus, the Court first determines whether Defendants' speech is misleading, coercive, or an attempt to undermine the collective action. Then, if the Court finds any basis for restricting the speech, it will tailor appropriate injunctions and sanctions in light of First Amendment concerns.

*Is EmCare's letter the type of communication that should be restricted?*

 The Court finds that EmCare's letter to absent potential class members was misleading in several ways. As described above, the letter mischaracterized the suit as an attack on the absent class members' status as "professionals" in the workplace. Second, it mischaracterized the damages available to the putative class by ignoring statutory liquidated damages. Third, it represented that attorney's fees would be deducted from any recovery when attorney's fees are available as a separate element of damage.

Additionally, the Court finds that EmCare's letter was coercive. As a letter sent from an employer to its employees,[7] any statements in EmCare's letter have heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive. *Kleiner,* 751 F.2d at 1202; *Hampton Hardware, Inc.,* 156 F.R.D. at 633. EmCare exploited this relationship by preying upon fears and concerns held in the medical community and by suggesting that this action could affect the potential class members' employment. The Court finds that EmCare equated this wage claim with a malpractice suit and suggested that this action could "affect ongoing clinical operations" in an attempt to frighten potential class members from joining this action.[8]

---

**7.** The letter's first two sentences state: "the following information is provided to you by EmCare, Inc. on behalf of your employer or the company with which you contract. EmCare, Inc. and its subsidiaries provide management services to these companies pursuant to a series of contracts."

**8.** The Court rejects EmCare's argument that the letter's statements concerning the law prohibiting retaliation cures any coercive effect the letter may have. In relevant part, the letter states: "the law prohibits retaliation of any kind against individuals who elect to join and do not participate in the suit. Should you feel that you are being retaliated against for your decision to participate or not participate in this suit, please feel free to contact an EmCare representative." First, these two sentences are not sufficient to eliminate the fear of employer retaliation created by the letter's overall tone and the employer-employee relationship. Second, even if this passage did convince the absent class members that there could be no retaliation, the letter's coercion stems from concerns held by medical professionals against class action suits and

Finally, the Court finds that EmCare's letter was intended to undermine the purposes of the collective action by encouraging absent class members not to join. EmCare could have no purpose but to discourage absent class members from joining the suit when it misrepresented damages available and preyed upon the absent class members' fears and concerns. The fact that defense counsel admittedly assisted in the letter's drafting convinces the Court that these misrepresentations were not accidental. Additionally, sending the letter with no notice to Plaintiff or the Court, the day before EmCare was to provide Plaintiff with the potential class members' mailing addresses for the Court-approved notice, persuades the Court that EmCare intended to subvert the Court's carefully crafted notice and its role in administering the collective action.

Therefore, EmCare's letter is the type of communication that the Court has the authority and the duty to restrict. The Court has found, based on the facts in this case, that EmCare's letter meets three independent standards for restriction as an improper communication with absent class members because it is misleading, coercive, and an attempt to undermine the purposes of a collective action. Defendants' conduct is more egregious in this collective action than it would be in a class action because potential class members must opt into the collective action rather than opt out as in a class action. Moreover, the Court has found that EmCare and its counsel intentionally attempted to undermine the Court-approved notice.

Therefore, the Court now turns to appropriate sanctions and remedies.

*Injunction against future non-approved communications with absent class members*

■ The Court enjoins all Defendants from making any ex-parte communications with absent class members regarding this action until the end of trial.[9] Although the Court has no evidence that other Defendants participated in the EmCare letter, the Court finds that EmCare's abuse of the collective action, already established on the record, creates a sufficient threat of abuse to warrant enjoining all defendants. *See Burrell v. Crown Central Petroleum*, 176 F.R.D. 239, 244 (E.D.Tex.1997). Additionally, the Court's injunction is sensitive to the First Amendment because: (1) it does not interfere with communications unrelated to the current action and concerning the ongoing business relationship between Defendants and the potential class members; (2) its duration is appropriate because there is no legitimate reason for Defendants to communicate with class members, ex parte, before the end of trial; and (3) any less restrictive order would not effect the collective action's purposes. *See Hampton Hardware, Inc.*, 156 F.R.D. at 634.

*Sanctions*

The Court imposes the following sanctions on EmCare and its counsel Ronald Manthey to remedy any prejudice their unauthorized ex parte communication created.[10] First, the Court orders Defendant

---

from the threat that the suit will interfere with clinical operations.

Assurances against retaliation do not ameliorate those bases of coercion.

9. This injunction is a written order reflecting the Court's oral injunction issued at the December 5, 2003 hearing.

10. Although the Court only imposes the sanctions listed in this Opinion on the basis of sending a misleading and coercive notice to absent class members, the Court notes that Mr. Manthey's conduct also potentially violated at least three standards of practice to be observed by attorneys in the Eastern District of Texas as set forth in Local Rule AT–3: "In

EmCare to issue the corrective notice attached to this Opinion, on EmCare's letterhead. Such notice shall be sent to all potential class members to whom EmCare directed its improper communication within 10 days of this Order. EmCare shall bear the corrective notice's costs and all reasonable attorneys' fees and costs Plaintiff incurred in bringing this Motion for Protective Order, Sanctions, and Corrective Notice (including any fees and costs Plaintiff incurs in relation to the corrective notice).[11] The Court also orders that all potential class members to whom EmCare directed its improper communications shall have an additional 30 days to opt into the putative class. Finally, the Court reserves the possibility that it will allow putative class members to opt into the class post-verdict. The Court will rule on that sanction later in these proceedings depending on Defendants' ongoing conduct and/or any continuing harm from EmCare's improper communications.

## CONCLUSION

The Court, having found that Defendants intentionally attempted to subvert both the Court's role in this collective action and the Court's approved notice by unilaterally sending a misleading and coercive letter to potential class members, enjoins the Defendants from further unauthorized communications with absent class members and sanctions Defendant EmCare as described above. The Court is disappointed in counsel's behavior in this case and strongly encourages all parties to

fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client;" "A lawyer owes, to the judiciary, candor, diligence, and utmost respect;" and "a lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity."

conduct themselves as befits members of the bar in the future.

## APPENDIX A

### IMPORTANT NOTIFICATION TO POTENTIAL CLASS MEMBERS

**TO: ALL CURRENT OR FORMER HOURLY NURSE PRACTITIONERS AND PHYSICIAN'S ASSISTANTS EMPLOYED BY EMCARE, INC. OR ANY OF ITS RELATED ENTITIES AT ANY TIME SINCE FEBRUARY 25, 2000**

**FROM: THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS JUDGE LEONARD E. DAVIS, DISTRICT COURT JUDGE**

**RE: RIGHT TO JOIN A LAWSUIT SEEKING TO RECOVER UNPAID OVERTIME COMPENSATION**

**DATE: OCTOBER ___, 2003.**

### 1. PURPOSE OF NOTICE

The purpose of this Notification is to inform you of the existence of a collective action lawsuit in which you are potentially eligible to participate because you may be "similarly situated" to the named Plaintiff. This Notification is also intended to advise you how your rights under the Federal Fair Labor Standards Act (the "Act") may be affected by this lawsuit, and to instruct you on the procedure for participating in this suit, should you decide that it is appropriate and you choose to do so.

**11.** After a reasonable time, and in accordance with any of the Court's future orders, the Plaintiff shall submit a motion with affidavits requesting its reasonable and necessary fees related to this matter.

## 2. DESCRIPTION OF THE LAWSUIT

A lawsuit has been brought by June Belt ("Plaintiff") against EmCare, Inc., Texas EM–I Medical Services, P.A., and St. Paul ERDocs, P.A., (collectively referred to as "Defendants") in the United States District Court for the Eastern District of Texas as Cause No. 6:03–CV–73. The lawsuit alleges that Defendants violated the Act by failing to provide overtime compensation to Nurse Practitioners and Physician's Assistants employed by EmCare, Inc. and its related entities, including but not limited to those entities in various states containing "EM–I" in their legal name. Plaintiff's lead counsel in this case are:

James A. Jones

Jones & Associates, P.C.

5015 Tracy, Suite 100

Dallas, Texas

Toll–Free Telephone: (866) 302–LEGAL (5342)

Telephone: (214) 219–3456

Facsimile: (817) 430–8778

E–mail: *titlevii@lscom.net*

and

Richard J. Burch

Bruckner Burch, P.L.L.C.

5847 San Felipe # 3900

Houston, Texas 77057

Telephone: (713) 877–8788

Facsimile: (713) 877–8065

E–Mail: *Rburch@brucknerburch.com*

Generally, the overtime provisions of the Act require that, for all hours over forty hours per week that an employee works, the employer must compensate the employee at the rate of one and one-half times his or her regular hourly rate, unless that employee is properly classified as "exempt" from the overtime provisions of the Act. The Plaintiff in this lawsuit claims that during one or more weeks of her employment with Defendants, she worked in excess of forty hours, but was not paid overtime at the rate of one and one-half times her hourly rate for the hours she worked in excess of forty. Plaintiff is suing to recover unpaid overtime compensation for the period from February 25, 2000, to the present, liquidated damages as provided by the Act, and attorneys' fees. Defendants have denied these charges. Specifically, Defendants assert that Plaintiff was performing the work of an overtime-exempt professional and that Plaintiff was paid properly. Defendant St. Paul ERDocs also asserts that Plaintiff was an independent contractor rather than an employee.

## 3. COMPOSITION OF THE CLASS

The named Plaintiff seeks to sue on behalf of herself and also on behalf of other employees with whom she is similarly situated. Those that Plaintiff alleges are similarly situated are those current and former hourly Nurse Practitioners and Physician's Assistants employed by any EM–I entity or any other entity for whom EmCare, Inc. has been engaged to perform activities with respect to the employment arrangement (as stated in your Employment Handbook), directly or indirectly, from February 25, 2000 to the present.

This Notification is only for the purpose of determining the identity of those persons who wish to be involved in this case and has no other purpose. Your right to participate in this suit may depend upon a later decision by the United States District Court that you and the representative Plaintiff are actually "similarly situated."

### 4. YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above, that is, you were employed as an hourly Nurse Practitioner or Physician's Assistant by EmCare, Inc. or any of its related entities at any time from February 25, 2000, to the present, you may have a right to participate in this lawsuit.

### 5. HOW TO PARTICIPATE IN THIS LAWSUIT

Enclosed you will find a postcard entitled "Notice of Consent" ("Consent Form"). If you choose to join this lawsuit, and thus participate in any recovery that may result from this lawsuit, it is extremely important that you read, sign and return the Consent Form. The Consent Form is pre-addressed and postage paid for your convenience. Should the enclosed Consent Form be lost or misplaced, please contact counsel for Plaintiff listed on page one of this notice.

The signed Consent Form must be postmarked by _____, 2003. **If your signed Consent Form is not postmarked by _____, 2003, you will not participate in any recovery obtained against Defendants in this lawsuit.** If you have any questions about filling out or sending in the Consent Form, you may contact Plaintiff's counsel listed on page one of this notice.

### 6. NO RETALIATION PERMITTED

It is a violation of Federal law for EmCare, Inc. or any of its related entities to discharge, or in any manner discriminate or retaliate against you for taking part in this case. If you believe that you have been penalized, discriminated against or disciplined in any way as a result of your receiving this notification, considering whether to join this lawsuit or actually joining this lawsuit, you may contact Plaintiff's counsel or another lawyer of your choosing.

### 7. EFFECT OF JOINING THIS SUIT

If you choose to join in this lawsuit, you will be bound by the judgment, whether it is favorable or unfavorable. You will also be bound by, and will share in, any settlement that may be reached on behalf of the class.

By joining this lawsuit, you designate the representative Plaintiff as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.

The representative Plaintiff in this matter has entered into a contingency fee agreement with Plaintiff's counsel, which means that if there is no recovery, there will be no attorneys fees or costs chargeable to you. If there is a recovery, Plaintiff's counsel will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. You may request a copy of the contingency fee agreement executed by the Plaintiff in this matter from Plaintiff's counsel at the address, telephone number, facsimile number, or e-mail that appears on page one of this notice.

### 8. NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. You will not be entitled to share any amounts recovered by the class. You will be free to

file your own lawsuit. However, the pendency of this suit will not stop the running of the statute of the limitations as to any claims you might have until you opt-in to it.

## 9. FURTHER INFORMATION

Further information about this Notification or the lawsuit may be obtained from Plaintiffs' counsel at the address, telephone number, facsimile number or e-mail identified on page one of this notice, or on the internet at *www.npovertime.com* or *www.paovertime.com.*

*THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, HON. LEONARD E. DAVIS, DISTRICT JUDGE. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS OF THE PLAINTIFF'S CLAIMS OR OF THE DEFENDANTS' DEFENSES.*

## APPENDIX B

**EmCare**®

*Emergency Medicine. Customer Driven.*

The following information is provided to you by EmCare, Inc. on behalf of your employer or the company with which you contract. EmCare, Inc. and its subsidiaries provide management services to these companies pursuant to a series of contracts. The purpose of this communication is to respond to certain questions you may have concerning a lawsuit entitled *June Belt v. EmCare, Inc., et al.*

I understand EmCare, Inc. and Texas EM–I Medical Services, P.A. have recently been sued by a nurse practitioner for misclassifying her as exempt from overtime. What is the scope of the suit?

On February 25, 2003, a nurse practitioner who formerly worked in an emergency department supported by Texas EM–I Medical Services, P.A., EmCare of Texas, Inc. and EmCare, Inc. filed suit against these three entities. She alleges that she was not properly classified as exempt from overtime compensation because she was not employed in a bona fide professional position, or in the alternative, because she was paid on an hourly basis. At present, this suit seeks to include all nurse practitioners and physician assistants who have worked in hospitals associated with EmCare owned or managed companies since February 25, 2000.

We believe that the positions are exempt as professionals and that the claims in this suit do not give appropriate consideration to the nature of work performed by nurse practitioners and physician assistants and the amount of independence, discretion, and professional judgment they exercise on a daily basis.

What is EmCare, Inc.'s position about these nurses practitioners and physician assistants?

EmCare, as a management company, believes that the independent and professional work performed by licensed and trained nurse practitioners and physician assistants is the type of work required of an exempt employee. Nurse practitioners and physician assistants not only engage in professional activities and functions in their jobs, but they also exercise significant discretion and independent judgment in assessing, diagnosing and treating patients. Companies under management agreements with EmCare treat these employees like other exempt professionals and compensate them in a manner commensurate with the level of responsibility of their positions.

What exactly is this nurse practitioner suing to recover?

In general, the Plaintiff nurse practitioner is seeking to recover overtime pay for the hours she worked in excess of 40 in a workweek. She is also asking the Court to order that the nurse practitioners and physician assistants within the scope of the lawsuit be reclassified as nonexempt employees.

What happens if the Plaintiff nurse practitioner wins her suit?

This case is not unlike the medical malpractice lawsuits you may be familiar with, in that Ms. Belt has hired a plaintiff's lawyer to ask a court to award her money. Ms. Belt and her lawyer would like you to join as a plaintiff in their lawsuit if you are eligible to do so. If Ms. Belt and any other individuals who join as plaintiffs win, the Court may award Ms. Belt and the plaintiffs some money for past overtime worked. Some portion of the Court's award presumably will be paid to the Plaintiff's attorney as fees. It is unclear how the Court's rulings may impact clinical operations on a going forward basis.

What happens if the Plaintiff loses her suit?

Should the Court rule against the Plaintiff, any claims for overtime pay by a nurse practitioner or physician assistant joining the suit will be barred and no other changes to exempt status, etc. will be necessary.

How do others treat the exempt status of their nurse practitioners and physician assistants?

It is our understanding from an informal and limited survey that nurse practitioners and physician assistants generally are treated as exempt professionals by others in the health care industry. This is consistent with the Department of Labor's general characterization of nurse practitioners

and physician assistants as professional employees. Plaintiff, of course, contests EmCare, Inc.'s interpretation. EmCare and Texas EM–I intend to vigorously defend the classification of the Plaintiff and all nurse practitioners and physician assistants as exempt.

I am a Nurse Practitioner or Physician Assistant. Can I join in the suit?

You will receive a notice describing the suit and a consent form that allows you to join the suit. Ultimately, however, it will be up to the Court to determine who will be a party to the suit.

NO RETALIATION.

If you are a physician assistant or a nurse practitioner, the decision to sign the consent form or not is entirely up to you. The Plaintiff may or may not prevail with regard to her claims. Regardless, the law prohibits retaliation of any kind against individuals who elect to join and do participate in the suit. Should you feel that you are being retaliated against for your decision to participate or not participate in this suit, please feel free to contact an EmCare representative. Should you elect to join the suit, you will be represented by the Plaintiff's attorney, who will advise you about this particular lawsuit, but should you have questions or information about your duties and exempt status as a professional, you can always raise this issue with your Employer or EmCare.

This is for information only. The Court has not reviewed this communication.

### APPENDIX C

### CORRECTIVE NOTICE

You may have received a letter in October from EmCare, Inc. on EmCare letterhead regarding this lawsuit. The EmCare letter was not reviewed by the Court prior to its mailing, and the Court did not previ-

ously authorize EmCare to send the letter. Because the letter contained some statements that may have created some confusion or misunderstandings, the Court has ordered this Corrective Notice to be sent to you—to eliminate any possible confusion created by EmCare's letter.

**This Lawsuit is Not an Attack on Your Professionalism.**

This lawsuit is not an attack on your status as a professional in the medical community; this case is about overtime pay. One of the exemptions from the overtime requirements is what is known as the "professional exemption." However, the term "professional" as used in the overtime context is a term of art under the Fair Labor Standards Act (the "FLSA") and does not equate to whether or not someone in a particular job is a professional within commonly understood meaning of that word. Plaintiff, being a Nurse Practitioner herself, obviously recognizes that it is beyond dispute that your work is difficult and important to your patients and to the community at large. To the extent that the Plaintiff is arguing that she and the other members of the class are not "professionals" under the FLSA, she is arguing that they do not fall within the definition of that term of art under the FLSA, not that Nurse Practitioners and Physician Assistants are not professionals (within the common meaning of that word) in the medical community.

**This Lawsuit is Not Equivalent to a Medical Malpractice Action.**

EmCare's letter made reference to medical malpractice lawsuits. The lawsuit filed by June Belt is not a medical malpractice lawsuit. This lawsuit does not attack the work performance of any medical provider and does not assert that you have done anything wrong. To the contrary, it asserts that you have not been paid all of the compensation to which you are legally entitled for the work you have performed.

**A Department of Labor Investigator Reviewed and Did Not Approve of EmCare's Pay Practices.**

EmCare incorrectly stated in its letter that the treatment of nurse practitioners and physician assistants "as exempt professionals by others in the health care industry . . . . is consistent with the Department of Labor's general characterization of nurse practitioners and physician assistants as professional employees." Prior to filing this lawsuit, Plaintiff June Belt reported EmCare to the Department of Labor ("DOL"). Ms. Belt reported that EmCare had paid her on an hourly basis but had failed to pay overtime compensation as required by federal law. Although the parties in this case dispute exactly what DOL investigators concluded, the DOL did not approve of EmCare's pay practices. The DOL investigator informed Ms. Belt of her right to file an FLSA lawsuit to recoup whatever overtime might be owed her and that her employer had been informed of its obligation.

**The Court is Neutral in this matter.**

The Court takes no position in this case. Please do not direct any questions regarding this lawsuit to the Court. If you have further questions about this lawsuit or your rights, you may contact the lawyers for Ms. Belt and the other opt-in plaintiffs at the numbers listed above. In addition, if you receive any further communications from EmCare regarding the subject matter of this lawsuit, please contact Plaintiff's counsel immediately.

**The Damages to Which You Are Entitled if Successful.**

The law provides that, if EmCare failed to pay you overtime to which you were legally entitled, you are entitled to recover

100% of the overtime pay you did not receive for the two years prior to your joining this lawsuit (three years if, as Plaintiff has alleged, EmCare's failure to pay you overtime is found to have been willful), an equal amount as "liquidated damages," plus attorneys' fees and costs. Therefore, you should disregard any implication to the contrary from the statement in EmCare's first letter that "[I]f Ms. Belt and any other individuals who join as plaintiffs win, the Court may award Ms. Belt and the plaintiffs some money for past overtime worked" and that "[s]ome portion of the Court's award presumably will be paid to the Plaintiff's attorney as fees."

**Some Final Comments Regarding this Corrective Notice.**

You are being sent this Corrective Notice to allow you to make an informed choice as to whether to join this lawsuit. This decision is yours alone. The Court has not taken any position on the merits of the Plaintiff's claims or EmCare's defenses. However, Federal law prevents EmCare, Inc. or any of its related entities from taking any adverse action against you for joining this lawsuit. As stated above, this means you cannot be fired, sued, demoted, or otherwise discriminated against for participating in this suit.

**Retaliation for Taking Part in This Lawsuit is Prohibited.**

As previously outlined in the Court's original notice, it is a violation of Federal law for EmCare, Inc. or any of its related entities to discharge, or in any manner discriminate or retaliate against you for taking part in this case. If you believe that you have penalized, discriminated against or disciplined in any way as a result of your receiving this notification, considering whether to join this lawsuit or actually joining this lawsuit, you may contact Plaintiff's counsel or another lawyer of your choosing. However, do not contact EmCare or any of the other defendants in this case.

Accordingly, questions regarding this case should be directed to Plaintiff's counsel. The call is free and confidential. You can decide whether to join the lawsuit after speaking to Plaintiff's counsel or a lawyer of your own choosing. You can contact Plaintiff's counsel at:

James A. Jones OR
JONES & ASSOCIATES, P.C.
5015 Tracy, Suite 100
Dallas, Texas
Toll–Free Telephone: (866) 302–LEGAL (5342)
Telephone: (214) 219–3456
Facsimile: (817) 430–8778
E-mail: titlevii@lscom.net

Richard J. Burch
BRUCKNER BURCH PLLC
5847 San Felipe # 3900
Houston, Texas 77057
Toll–Free Telephone: (800) 443–2441
Telephone: (713) 877–8788
Facsimile: (713) 877–8065
E-Mail: Rburch@brucknerburch.com

**Extension of Deadline**

The deadline for joining this lawsuit was originally **February 4, 2004.** If you are receiving this letter, the deadline for joining the suit has been extended 30 days to **March 5, 2004. Your notice of consent (enclosed) must be post-marked by that date or you may not be allowed to join this lawsuit.** You must file a notice of consent in order to receive unpaid overtime wages.

## Notice of Consent

I am or was an hourly Nurse Practitioner or Physician's Assistant for EmCare, Inc. or one of its related entities at some point since February 25, 2000. I want to be part of an action for unpaid overtime wages, and I agree to have Jones & Associates, P.C. for my lawyers.

I worked for EmCare or a related entity from _____ to _____ as an hourly Nurse Practitioner or Physician's Assistant.

Complete Name _____ Signature _____

Street and number _____ City _____ State _____ Zipcode _____

(___)_____
Telephone Date _____

## Notice of Consent

I am or was an hourly Nurse Practitioner or Physician's Assistant for EmCare, Inc. or one of its related entities at some point since February 25, 2000. I want to be part of an action for unpaid overtime wages, and I agree to have Jones & Associates, P.C. for my lawyers.

I worked for EmCare or a related entity from _____ to _____ as an hourly Nurse Practitioner or Physician's Assistant.

Complete Name _____ Signature _____

Street and number _____ City _____ State _____ Zipcode _____

(___)_____
Telephone Date _____

## Notice of Consent

I am or was an hourly Nurse Practitioner or Physician's Assistant for EmCare, Inc. or one of its related entities at some point since February 25, 2000. I want to be part of an action for unpaid overtime wages, and I agree to have Jones & Associates, P.C. for my lawyers.

I worked for EmCare or a related entity from _____ to _____ as an hourly Nurse Practitioner or Physician's Assistant.

Complete Name _____ Signature _____

Street and number _____ City _____ State _____ Zipcode _____

(___)_____
Telephone Date _____

## Notice of Consent

I am or was an hourly Nurse Practitioner or Physician's Assistant for EmCare, Inc. or one of its related entities at some point since February 25, 2000. I want to be part of an action for unpaid overtime wages, and I agree to have Jones & Associates, P.C. for my lawyers.

I worked for EmCare or a related entity from _____ to _____ as an hourly Nurse Practitioner or Physician's Assistant.

Complete Name _____ Signature _____

Street and number _____ City _____ State _____ Zipcode _____

(___)_____
Telephone Date _____