Theresa PIEKARSKI, on behalf of herself and all others similarly situated, Plaintiff,

v.

AMEDISYS ILLINOIS, LLC and Amedisys Holding LLC, Defendants.

Case No. 12–CV–7346

United States District Court, N.D. Illinois, Eastern Division.

November 12, 2013

Douglas M. Werman, David Erik Stevens, Maureen Ann Salas, Sarah Jean Arendt, Werman Law Office, P.C., Chicago, IL, for Plaintiff.

John Francis Kennedy, Cary E. Donham, Douglas Michael Ramsey, Erin K. Lynch, Sherri L. Thornton–Pierce, Shefsky & Froelich Ltd., David Loren Christlieb, Lavanga Vusitha Wijekoon, Littler Mendelson, P.C., Chicago, IL, Angelo Spinola, Littler Mendelson, PC, Atlanta, GA, Michael McIntosh, Littler Mendelson, P.C., McLean, VA, for Defendants.

## ORDER

JOHN W. DARRAH, United States District Court Judge

Plaintiff Theresa Piekarski has moved for a protective order on the basis that after this case was stayed, Defendants have sent self-executing waivers to potential class members binding them to arbitration. For the reasons discussed below, that Motion [74] is granted in part and denied in part. The following is ordered:

(1) The Dispute Resolution Agreement is invalidated as it applies to Illinois class members in this litigation;

(2) Defendants are directed to provide Plaintiff the names, addresses, and email addresses of all Illinois class members who were sent the Dispute Resolution Agreement;

(3) Defendants are directed to provide Plaintiff with any Opt–Out Forms received from Illinois class members; and

(4) Plaintiff is authorized to issue a Court-approved corrective notice at Defendants' expense, in the form attached as Exhibit A, to all Illinois class members.

## STATEMENT

On September 13, 2012, Plaintiff Theresa Piekarski filed this Fair Labor Standards Act ("FLSA") collective action against Amedisys Holding LLC and Amedisys Illinois, LLC (collectively, the "Defendants"), on behalf of a putative class of Illinois home healthcare clinicians who work or had worked for Amedisys. On

May 28, 2013, on Defendants' Motion, this case was stayed, pending resolution of class certification issues and dispositive motions in the matter, *Cook v. Amedisys, Inc.,* No. 3:12–cv–1082 (D.Conn.) (currently proceeding as *Tompkins v. Amedisys, Inc.*) except that limited discovery was permitted to allow Plaintiff to provide notice to Illinois putative class members. On August 14, 2013, on Defendants' Motion, the May 28, 2013 Order was clarified to state that notice would be provided to class members only after a conditional class was certified and after notice was approved by this Court. (*See* May 28, 2013 Order; August 14, 2013 Order.) The case was referred to the magistrate judge for disputes regarding the permitted discovery.

After the stay was entered, and without moving to modify the stay or notifying Plaintiff or this Court, Defendants implemented a company-wide policy called the "Amedisys Arbitration Program," which mandated arbitration for nearly all employment disputes and barred employees from pursuing litigation, unless the employee affirmatively opted-out within 30 days. To announce this policy, Defendants sent an email to all Amedisys employees. Although neither party has submitted a copy of the actual email sent out (which would have been helpful), it is clear, based on an August 19, 2013 letter from Defendants' counsel to Plaintiff's counsel, that the actual email contained little to no information about the arbitration program. (*See* Pl.'s Mem. in Supp. of Mot., Exh. D.)

Instead, the email contained electronic links to three documents: (1) the "Dispute Resolution Agreement" (the "DRA"); (2) a cover letter from Amedisys human resources explaining the new arbitration policy; and (3) "Amedisys Arbitration Program—FAQs." (Pl.'s Mem. in Supp. of Mot., Exhs. A–D.) Amedisys employees had to open each link in order to access those documents because they were not attached as separate documents to the email. The cover letter informed Amedisys employees that if they did not want to be covered by the new arbitration policy and wanted instead to preserve their rights in court, they had to notify Amedisys within 30 days by printing out and signing an opt-out form. The letter recommended that the employees read the DRA and noted that employees who did not opt-out of arbitration would be barred from participating in any class actions, including the *Tompkins* action and this present *Piekarski* action. The cover letter also contained electronic links for employees to access the complaints in both those actions. In other words, to access the complaints, the employees had to open a link within a link.

Plaintiff has requested that this Court invalidate the DRA and also authorize the issuance of corrective notice to Illinois class members. Plaintiff argues that Defendants' implementation of an arbitration program is improper, abusive and misleading because it was done after this collective action was filed and after Defendants obtained a stay of the litigation, and because Defendants implemented the policy in a way that made it unlikely that employees would opt-out. Defendants respond by arguing that the DRA is valid because federal law favors arbitration and that their communications regarding the DRA were not misleading or coercive.

█ As the Supreme Court has repeatedly recognized, because of the potential for abuse in class actions, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (quoting *Gulf Oil*

*Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)). This authority extends to the district court's ability to grant protective orders limiting communications between parties and potential class members. *Williams v. Chartwell Fin. Servs.,* 204 F.3d 748, 759 (7th Cir.2000). However, this authority is not without limits because parties have a right to contact members of a putative class. *Id.* Therefore, before granting such an order, a district court must carefully balance these concerns and make specific findings as follows:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties.... In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

*Gulf Oil Co.,* 452 U.S. at 101, 101 S.Ct. 2193; *see also Williams,* 204 F.3d at 759. Using this rationale, district courts have restricted communications with potential class members not only by plaintiffs but also by defendants, as well as communications before a class is certified. *See, e.g., Bublitz v. E.I. DuPont de Nemours & Co.,* 196 F.R.D. 545, 547 (S.D.Iowa 2000); *Abdallah v. Coca–Cola Co.,* 186 F.R.D. 672, 675 n. 1 (N.D.Ga.1999); *Burrell v. Crown Cent. Petroleum, Inc.,* 176 F.R.D. 239, 242–43 (E.D.Tex.1997).

██ The moving party bears the burden of showing that nonmovant has engaged in coercive, misleading, or other abusive communications with the putative class. *Gulf Oil Co.,* 452 U.S. at 102, 101 S.Ct. 2193; *see also Belt v. Emcare, Inc.,*

299 F.Supp.2d 664, 668 (E.D.Tex.2003). Of particular concern to courts is whether "a party has made misrepresentations to putative class members or has attempted to discourage class members from participating in the class." *Dominguez v. Don Pedro Rest.,* No. 06 CV 241, 2007 WL 1650289, *2 (N.D. Ind. June 1, 2007) (citing *Belt,* 299 F.Supp.2d at 668–69.); *see also Goody v. Jefferson Co.,* No. CV–09–437, 2010 WL 3834025, at *3 (D.Idaho Sept. 23, 2010) (requiring corrective notice where defendant's communications with potential class members caused confusion about right to join suit); *In re Currency Conversion Fee Antitrust Lit.,* 361 F.Supp.2d 237, 254 (S.D.N.Y.2005) ("[D]efendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation."). Furthermore, where there is an ongoing business or employment relationship between the class and the class opponent, communications may be inherently coercive. *See Kleiner v. First Nat'l Bank of Atl.,* 751 F.2d 1193, 1202 (11th Cir.1985) ("[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.") (citing Note, Developments in the Law—Class Actions, 89 Harv. L.Rev. 1318, 1600 (1976)); *see also Burrell,* 176 F.R.D. at 244 ("[T]he court recognizes that an ongoing business relationship, such as employee and employer, may cause communications between litigants to be coercive."); *In re Currency Conversion Fee Antitrust Lit.,* 361 F.Supp.2d at 253 (holding arbitration clauses offered by defendant credit card companies during litigation was coercive and unenforceable where "the potential class consisted of cardholders who depended on defendants for their credit needs").

Plaintiff points to the case of *Williams v. Securitas Security Services USA,* No. 10–7181, 2011 WL 2713741 (E.D.Pa. July

13, 2011), in which the court invalidated an arbitration agreement distributed by the defendant-employer, after class and collective action lawsuits had been filed. As in this case, the arbitration agreement at issue in *Securitas* was binding on all employees unless they affirmatively opted out of the agreement within 30 days of receiving it. *Id.* at \*3. Although Defendants try to distinguish *Securitas* based on some differences in the agreements, the court's reasoning is helpful in this case. The court found that the arbitration agreement was misleading and "likely to cause confusion to potential class members" because it did not require an employee to sign the document before it became effective. *Id.* at \*2. The court noted that lay persons were likely to understand a document labeled "agreement" only to be binding on them if they affirmatively approved and signed it. The court stated that, "[q]uite simply, this Agreement stands the concept of fair dealing on its head and is designed to thwart employees of Securitas from participating in this lawsuit." *Id.*

▮ Likewise, in this case, Defendants' distribution of the DRA was likely to confuse and mislead potential class members and prevent them from participating in this litigation. In order to opt-out of binding arbitration that would waive their rights in this case, Defendants' employees needed to affirmatively complete several steps. First, after opening their email, the employees had to open links to access the three different documents; Defendants notably did not choose the more accessible option of attaching the documents or distributing hard copies of the documents. Second, the employees had to read and decipher the documents, which number close to fifty pages. Third, employees had to print out, sign and mail back the opt-out form at the back of the DRA to an address in Louisiana, within 30 days. Fourth, if the employees wanted to access the complaints in this case or the *Tompkins* case, they had to open links within the link to the cover letter. Defendants' proficiency at creating electronic links to documents begs the question why Defendants insisted on its employees printing out and mailing back a paper opt-out form, instead of creating a much more accessible electronic form that could be signed and submitted electronically. The answer appears obvious—that Defendants intended its employees would not follow all these steps and would instead be bound to arbitrate their grievances.

As in *Securitas*, it is likely that Defendants' employees did not understand they would be bound by this agreement, distributed electronically, unless they affirmatively opted-out. Furthermore, Defendants' actions are, simply put, highly improper in light of this Court's Orders issuing and clarifying the stay entered in this case, which Defendants requested.

▮ It is clear that Defendants' abusive tactics must be remedied. However, Plaintiff's requested relief goes too far when she asks that Defendants be prohibited from communicating with Illinois class members and that Defendants provide her with *all* documents sent to or received from Illinois class members. As the Supreme Court stated in *Gulf Oil,* the Court's orders must be carefully drawn to limit speech as little as possible. Consequently, it is therefore Ordered that:

(1) The Dispute Resolution Agreement is invalidated as it applies to Illinois class members in this litigation;

(2) Defendants are directed to provide Plaintiff the names, addresses, and email addresses of all Illinois class members who were sent the Dispute Resolution Agreement;

(3) Defendants are directed to provide Plaintiff with any Opt–Out Forms received from Illinois class members; and

(4) Plaintiff is authorized to issue a Court-approved corrective notice at Defendants' expense, in the form attached as Exhibit A, to all Illinois class members.

EXHIBIT A

Werman

77 West Washington Street

Suite 1402

Chicago, Illinois 60602

Tel: (312) 419–1008

Fax: (312) 419–1025

www.flsalaw.com

———, 2013

Name

Address Line 1

Address Line 2

Re: *Piekarski v. Amedisys Illinois, LLC & Amedisys Holding LLC* (Case No. 12 C 7346)

Dear «Salutation»:

You are receiving this letter in relation to a proposed class and collective action lawsuit entitled *Piekarski v. Amedisys Illinois, LLC and Amedisys Holding LLC,* now pending in the U.S. District Court for the Northern District of Illinois. This letter has been approved by the Court presiding over the lawsuit.

The Plaintiff in the *Piekarski* case seeks to bring claims on behalf of a proposed class of current and former Clinicians for unpaid overtime wages. Plaintiff alleges that Amedisys violated the Fair Labor Standards Act and the Illinois Minimum Wage Law by failing to pay her and other Clinicians working in Illinois overtime wages. Plaintiff contends that she and other Clinicians should have been paid overtime wages for all time they worked in excess of forty (40) hours a week, including time they spent visiting patients, traveling between visits and time they spent completing paperwork The Court has not yet determined whether the *Piekarski* case will proceed as a class or collective action. The Court also has not ruled on whether the Plaintiff's claims have merit. Amedisys denies that Plaintiff's claims have merit and deny that the case should be allowed to proceed as a class and collective action.

*Amedisys* recently sent Clinicians employed in Illinois an email containing electronic links to a Dispute Resolution Agreement, setting forth a new arbitration policy Amedisys adopted. The Dispute Resolution Agreement stated that unless an employee submitted a form to opt-out of the agreement within 30 days of receipt of the agreement, the employee could not participate as a class member in the *Piekarski* action. On ——, ——, 2013, the Court entered an order invalidating the Dispute Resolution Agreement as it applies to the participation of Illinois Class Members in this lawsuit.

If you have any questions about the effects of the Dispute Resolution Agreement or questions about the *Piekarski* case, please call Plaintiff's attorneys at the telephone number below.

Douglas M. Werman

Maureen A. Salas

Werman Law Office, P.C.

77 West Washington Street, Suite 1402

Chicago, Illinois 60602

Telephone: (312) 419–1008

E–mail: dwerman@flsalaw.com

E-mail: msalas@flsalaw.com