Brenda **PACHECO,** in her individual capacity, and **Maximiliano Lopez** and **Carol Buchanan,** on behalf of themselves and a class of those similarly situated, Plaintiffs,

v.

Wessam **ALDEEB; Ersan Aldeeb; Saadia Rachik; Palms Administrative Services, LLC; La Cantera Subway, Inc.; North Star Marble Slab Inc.; Great American Cookies–N–Cream, LLC; Pyramids Exchange, LLC; Legacy Marble Slab, Inc.; Westover Marble Slab, Inc.; Legacy Subway, Inc.; Ingram Park Marble Slab, LLC; and North Star Swirly, LLC,** Defendants.

Cv. No. 5:14–CV–121–DAE.

United States District Court,
W.D. Texas,
San Antonio Division.

Signed Sept. 1, 2015.

Sarah E. Donaldson, Texas Riogrande Legal Aid, Inc., Philip Jonathan Moss, San Antonio, TX, for Plaintiff.

Rebecca Calvillo, San Antonio, TX, pro se.

Haroon Rafati, The Rafati Law Firm, PLLC, Katy, TX, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER, CORRECTIVE NOTICE, AND SANCTIONS

DAVID ALAN EZRA, Senior District Judge.

Before the Court is a Motion for Protective Order, Corrective Notice, and Sanctions filed by Plaintiffs Maximiliano Lopez and Carol Buchanan, on behalf of themselves and all others similarly situated, Brenda Pacheco, Miguel Robles, Karen

Green, and Robert Maldonado (collectively, "Plaintiffs") (Dkt. # 68). The Court held a hearing on the Motion on September 1, 2015. At the hearing, Sarah Donaldson and Philip Moss, Esqs., represented Plaintiffs, and Haroon Rafati, Esq., represented Defendants Wessam Aldeeb; Ersan Aldeeb; Saadia Rachik; Palms Administrative Services, LLC; La Cantera Subway, Inc.; North Star Marble Slab Inc.; Great American Cookies-N-Cream, LLC; Pyramids Exchange, LLC; Legacy Marble Slab, Inc.; Westover Marble Slab, Inc.; Legacy Subway, Inc.; Ingram Park Marble Slab, LLC; and North Star Swirly, LLC (collectively, "Defendants"). After careful consideration of the supporting and opposing memoranda and the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS** Plaintiffs' Motion for Protective Order, Corrective Notice, and Sanctions.

### · BACKGROUND

On February 11, 2014, Plaintiffs filed an Amended Complaint in this Court asserting that Defendants failed to pay their employees for all hours worked and for overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, on behalf of themselves and all similarly situated persons employed by Defendants in the three years prior to filing the Complaint. (Dkt. # 2 ¶¶ 41, 43–44.) Plaintiffs filed a Second Amended Complaint on June 22, 2015. (Dkt. # 64.) Plaintiffs seek unpaid overtime wages, unpaid minimum wages, liquidated damages, and attorneys' fees and costs. (*Id.* at 10–11.)

On March 31, 2015, the Court entered an Order conditionally certifying the class, but found that named plaintiff Brenda Pacheco ("Pacheco") could not represent the class and must proceed as an individual plaintiff because she is not similarly situated to the class of hourly wage employees. (Dkt. # 37.) On April 6, 2015, the Court

entered an Order providing for notice to potential class members, setting a 60–day notice period, and giving Plaintiffs 15 days following the expiration of the notice period to file notices of consent to join the lawsuit. (Dkt. # 39.)

On July 20, 2015, Plaintiffs filed the instant Motion for Protective Order, Corrective Notice, and Sanctions. (Dkt. # 68.) Plaintiffs allege that Defendants "have engaged in an improper campaign to frustrate the Court-supervised notice and to keep Plaintiffs and Class Members from participating in the lawsuit." (*Id.* at 1.) Plaintiffs specifically allege that Defendants have demanded that current employees sign releases as a condition to receiving paychecks, withheld paychecks from employees who would not sign such releases, represented to plaintiffs and class members that there was no point in joining the lawsuit and that the lawsuit had ended, offered an opt-in plaintiff a raise if he dropped his claims, reduced the hours of an opt-in plaintiff, and offered money to an employee to persuade other plaintiffs to dismiss their claims. (*Id.* at 1–2.) In support of these allegations, Plaintiffs have submitted the declarations of opt-in plaintiff Tevin Todd ("Todd"), opt-in plaintiff Erik Ibarra ("Ibarra"), and individual plaintiff Pacheco.

Todd worked for Defendants' Marble Slab Creamery franchises from 2014 until July 2015. ("Todd Decl.," Dkt. # 68–1 ¶ 2.) Todd declares that Defendant Ersan Aldeeb ("Aldeeb") told him and several other employees that "there was no point in signing up for the lawsuit because people were not going to get paid." (*Id.* ¶ 3.) After Todd joined the lawsuit, Aldeeb asked why he had joined the lawsuit, and the same day offered Todd a $1,000 loan. (*Id.* ¶ 5.) Shortly thereafter, Aldeeb offered Todd a raise if he wrote an email to Plaintiffs' counsel stating that he wanted to

dismiss his claims. (*Id.* ¶ 6.) Todd did not want to send the email but was concerned that he would not receive a raise if he did not cooperate. (*Id.*) Aldeeb told Todd what to write, and watched him write and send the email.[1] (*Id.*) In June 2015, Aldeeb called Todd and told him "the lawsuit was over." (*Id.* ¶ 7.)

Pacheco worked for Defendants' Marble Slab Creamery and Great American Cookies franchises from 2007 through 2013, with a gap of about one year around 2009. ("Pacheco Decl.," Dkt. # 68–3 ¶ 2.) Pacheco also returned to work for the companies in May and June of 2015 "in order to pay bills and support [her] family." (*Id.* ¶¶ 2, 6.) In May 2015, Defendant Wessam Aldeeb asked that Pacheco contact named plaintiffs Maximiliano Lopez and Carol Buchanan to persuade them to drop the lawsuit, and offered her money if she was successful. (*Id.* ¶ 10.) Also in May, Wessam Aldeeb wrote emails to be sent by Pacheco to Plaintiffs' attorneys requesting that Plaintiffs' counsel not contact Pacheco and that they drop her case. (*Id.* ¶ 7.) Pacheco believes Wessam Aldeeb sent at least one email to Plaintiffs' counsel from her email account by using her password without her consent. (*Id.*) Additionally, on June 24, 2015, Wessam Aldeeb required Pacheco to enter the password to her email account so that he could write an email to Pacheco's attorneys. (*Id.* ¶ 8.) Pacheco believed she needed to cooperate in order to receive her paycheck, and allowed Wessam Aldeeb to send an email on her behalf asking to dismiss her claims. (*Id.;* Dkt. # 69–4, Ex. D at 6).

Finally, Todd, Pacheco, and Ibarra[2] all state that in the spring of this year, Defendants began requiring employees to sign a waiver in order to receive their paychecks.

(Todd Decl. ¶ 8; Pacheco Decl. ¶ 9; "Ibarra Decl.," Dkt. # 68–2 ¶ 3.) Ibarra and Todd know of coworkers who refused to sign the waiver and were subsequently not given their paychecks for several days. (Todd Decl. ¶ 9; Ibarra Decl. ¶ 4.) Defendants have also submitted an employment contract that they required all of their employees to sign after the lawsuit commenced. (Dkt. # 69 at 5–6; Dkt. # 69–3, Ex. C.) The contract requires employees to represent that, as of the date of execution, the employee was properly compensated for all hours worked, is owed no overtime pay, and has never been required to work "off the clock," each of which are factual allegations at issue in this action. (Dkt. # 69–3, Ex. C ¶ 7; Dkt. # 64. ¶¶ 37–42.) The contract also requires employees to bring disputes regarding compensation to the employer before seeking legal counsel. (*Id.* ¶ 6.)

## DISCUSSION

Because class actions present special opportunities for abuse, courts have broad authority to govern the conduct of both counsel and parties in FLSA collective actions. *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003) (citing *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). This authority includes the power to restrict communication between a party and absent class members. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The court's discretion in this area, however, is "not unlimited." *Id.* The Supreme Court has explained that "an order limiting communications between parties and potential class members should be based on a clear rec-

---

**1.** Defendants have submitted what appears to be the correspondence in question from Todd to Plaintiffs' counsel, albeit in letter form. (*See* Dkt. # 69–2, Ex. B.)

**2.** Ibarra worked for Defendants' Marble Slab Creamery franchises from November 2015 until June 2015. (Ibarra Decl. ¶ 2.)

ord and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101, 101 S.Ct. 2193. Furthermore, district courts may not restrict communication "without a specific record showing by the moving party of the particular abuses by which it is threatened." *Id.* at 102, 101 S.Ct. 2193 (quoting *Coles v. Marsh,* 560 F.2d 186, 189 (3d Cir.1977)).[3]

▪ Courts consider four factors to determine whether good cause exists to restrict ex parte communications tending to discourage absent class members from joining the suit: the severity and likelihood of the perceived harm, the precision with which the order is drawn, the availability of a less onerous alternative, and the duration of the order. *Belt,* 299 F.Supp.2d at 668 (citing *Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1206 (11th Cir.1985) and *Hampton Hardware Inc. v. Cotter & Co., Inc.,* 156 F.R.D. 630, 633 (N.D.Tex.1994)). Courts "have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to ... encourag[e] class members not to join the suit." *Id.* at 667–68. "Speech between parties with an ongoing business relationship is inherently conducive to coercive influence, and an employer-employee relationship is a salient example of this type of ongoing business relationship." *Castillo v. Hernandez,* No. EP–10–CV–247–KC, 2011 WL 1528762, at *3 (W.D.Tex. Apr. 20, 2011) (citations omitted).

▪ Here, there is ample evidence that Defendants have improperly discouraged their employees from joining this suit, and have further attempted to use their influence as employers to force plaintiffs who

have joined to the suit to drop their claims. Plaintiffs' evidence establishes that Defendants have conditioned the delivery of paychecks to current employees on the employees' agreement to represent that they have no claims against Defendants, offered an employee a raise in exchange for telling Plaintiffs' counsel that he wished to dismiss his claims, written emails on behalf of employees to Plaintiffs' counsel asking that their claims be dismissed, and offered to pay an employee to persuade other plaintiffs to dismiss their claims. By Defendants' own admission, after commencement of this suit, they required all of their employees to sign an agreement representing that they had been "fully and properly compensated" for all hours worked and requiring them to bring compensation disputes to Defendants before seeking legal counsel.

While Defendants' Response levels a variety of accusations at the declarants and Plaintiffs' counsel, Defendants have submitted no evidence to support their allegations. These allegations include that Plaintiffs' attorneys have improperly solicited employees to opt in to this suit, that the three declarants were "involved in a conspiracy and practice of taking money from the cash drawers," that Ibarra is "wanted" by the police for stealing from a cash drawer, and that Pacheco's claims are brought in bad faith. None of these assertions are supported by any competent evidence, and appear to be an attempt to distract from Defendants' own misconduct. Defendants have submitted an email from Plaintiffs' counsel denying any improper solicitation of potential class members; Plaintiffs' objections to a request for production; communications ostensibly from Pacheco and Todd asking Plaintiffs' coun-

---

**3.** Although *Gulf Oil* dealt with the Rule 23 class action context, the same concerns and considerations apply to § 216(b) FLSA cases.

*Hoffmann–La Roche,* 493 U.S. at 171, 110 S.Ct. 482.

sel to dismiss their claims (which each has declared to be a result of Defendants' coercion); and the employment agreement, described above, that Defendants required their employees to sign after this suit commenced. This evidence provides no support for Defendants' allegations, is consistent with the testimony of Plaintiffs' declarants, and in the case of the employment agreement, strongly supports Plaintiffs' claims that Defendants have improperly attempted to discourage and prevent potential class members from joining this suit.

■ In light of this evidence, the Court finds good cause to enjoin Defendants from engaging in any ex parte communication with plaintiffs or class members regarding the subject matter of this action while the litigation is ongoing. *See Castillo,* 2011 WL 1528762, at *7–8 (prohibiting defendants from communicating with plaintiff employees about the subject matter of a FLSA case where defendants sent letters inquiring into plaintiffs' immigration status and threatened a plaintiff with a lawsuit); *Belt,* 299 F.Supp.2d at 669 (enjoining defendants from making ex parte communications with class members where defendants sent letter mischaracterizing the action and the available remedies); *cf. Burrell v. Crown Cent. Petroleum, Inc.,* 176 F.R.D. 239, 244 (E.D.Tex.1997) (refusing to enjoin a class action defendant from engaging in commercial speech with its employees where the evidence showed defendant's communications were not misleading or coercive). To correct the prejudice caused by Defendants' conduct, the Court will allow Plaintiffs to send the corrective notice attached to this Order to all class members by U.S. mail. The corrective notice shall also be posted by Defendants at their places of business in a loca-

tion visible to employees. Defendants shall bear the cost of sending the corrective notice, and must further pay Plaintiffs' reasonable attorneys' fees incurred in bringing this Motion.[4] Class members shall have an additional 45 days from the date of this Order to file their notices of consent to join this suit.

### CONCLUSION

The Court, for the foregoing reasons, **GRANTS** Plaintiffs' Motion for Protective Order, Corrective Notice, and Sanctions, and **ORDERS** that:

1. Defendants and their counsel are prohibited from making any ex parte communications with plaintiffs or class members regarding this action until the action has concluded;

2. Plaintiffs' counsel are authorized to send by U.S. mail the corrective notice attached to this Order within thirty (30) days of the entry of this Order;

3. Defendants shall bear the cost of mailing the corrective notice within seven (7) days of the date that Plaintiffs' counsel provide Defendants' counsel with an invoice showing the cost of such mailing;

4. Defendants shall post, within three (3) business days after the entry of this Order, the corrective notice attached to this Order, in English and Spanish, at each of Defendants' Subway, Marble Slab Creamery, and Great American Cookies stores in Bexar and Kendall Counties, including but not limited to the locations at the Shops at La Cantera, North Star Mall, Westover Hills Shopping Center, and Legacy Shopping Center. Defendants shall post the no-

---

4. To establish the amount of reasonable attorneys' fees owed by Defendants, Plaintiffs shall submit a motion, supported by affidavits and

other appropriate documentation, setting out its reasonable attorneys' fees related to this matter.

tices in locations to which all employees have access;

5. Defendants, within seven (7) days of posting the corrective notices, shall certify to the Court in writing that they have posted the notices. Defendants may remove the posted notices thirty (30) days after the entry of this Order;

6. All opt-in plaintiffs shall have until forty-five (45) days after the entry of this Order to file their Notices of Consent to Join this suit; and

7. Defendants shall pay Plaintiffs' reasonable attorneys' fees incurred in bringing the Motion for Protective Order, Corrective Notice, and Sanctions. Plaintiffs shall file a motion, supported by appropriate evidence, for reasonable attorneys' fees in this matter, to which Defendants will have an opportunity to respond.

IT IS SO ORDERED.